# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**JOHN B. STEINHART**
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RUBEN ROSALES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1303-CR-229 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Thomas Newman, Jr., Judge
Cause No. 48C03-1207-FA-1240

**January 27, 2014**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Ruben Rosales appeals his conviction for attempted murder, a Class A felony, following a jury trial.[1] Rosales raises a single issue for our review, namely, whether the trial court committed fundamental error when it instructed the jury. We affirm.

## FACTS AND PROCEDURAL HISTORY

In June of 2012, Rosales was a member of the Latin Kings gang in Anderson. Rosales' girlfriend, Briana White, had had a number of problems with Serrano 13, a rival gang. Sergio Torres was a member of the Serrano 13 gang.

In the afternoon of June 27, Torres went to a business near his home and purchased a soft drink and a bag of chips. Torres proceeded down an alley to return to his home. At that time, Rosales, Donavan Ball, and David Rivera drove a van into the alley behind Torres. Ball jumped out of the van at Torres. Ball was unarmed and Torres was facing him. Torres then felt a blow to his head and blacked out. When he awoke, he was on the ground and he saw Rosales. Torres could barely move. He observed Rosales and Ball run back to the van and drive away.

A witness, Melamekia Watson, observed the van near the alley and observed a Caucasian male and an Hispanic male exit the van. Watson saw that the Hispanic male was carrying a "metal bat." Transcript at 266. She saw the two males enter the alley. She then saw the two men leave the alley "like they w[ere] on a mission" and reenter the van. Id. at 268. The Hispanic male still held the bat when Watson observed him reenter the van. The van then drove away.

---

[1] Rosales does not appeal his conviction for participation in a criminal gang, a Class D felony.

2

Police arrived shortly after the attack on Torres and observed "a lot of blood coming from [Torres'] head." Id. at 232. Torres was eventually diagnosed with life-threatening trauma to the head, including multiple skull fractures, a subdural hematoma, and bleeding in the brain.

The next day, Rosales went to the home of his aunt, Michelle Rosales. Michelle observed that Rosales was nervous, and she asked him why he was nervous. Rosales told his aunt "he needed to leave and go back to Chicago." Id. at 326. Michelle took Rosales to a bus station in Indianapolis and bought him a ticket to board a bus to Chicago. Michelle then called Amanda Smith, who lived with Ball, and "asked her what was going on, [be]cause I knew something had happened, obviously[,] by the way [Rosales] was acting." Id. at 328. Smith told Michelle "what had . . . happened," and Michelle called the police. Id. The police arrested Rosales at the bus station in Indianapolis.

On July 5, the State charged Rosales with attempted murder, a Class A felony, and participating in a criminal gang, a Class D felony. Rosales' was tried to a jury in January and February of 2013. The trial court instructed the jury on attempted murder in relevant part as follows: "the crime of attempted murder is defined as follows: a person attempts to commit a murder when, acting with the specific intent to kill another person, he engages in conduct that constitutes a substantial step toward kill[ing] that person." Id. at 557. The court also instructed the jury on accomplice liability, stating, in relevant part: "[a] person who knowingly or intentionally aids, induces or causes another person to commit an offense commits that offense . . . . An accomplice is liable for the acts of the principal which, even if not a part of their original plan, are probable and natural

consequences thereof." Id. at 563. The court further instructed the jury regarding the State's burden of proof.

The jury found Rosales guilty as charged of attempted murder, and the trial court sentenced him accordingly. This appeal ensued.

## DISCUSSION AND DECISION

Rosales raises a single issue for our review, namely, whether the trial court committed fundamental error when it instructed the jury on accomplice liability. As our Supreme Court has explained:

> A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." The error claimed must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and elementary principles of due process." This exception is available only in "egregious circumstances."

Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010) (citations omitted); see also Hopkins v. State, 759 N.E.2d 633, 638 (Ind. 2001); Canaan v. State, 683 N.E.2d 227, 235 n.6 (Ind. 1997).

The task of instructing the jury is left to the sound discretion of the trial court. As we have explained:

> The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. Instruction of the jury is left to the sound judgment of the trial court and will not be disturbed absent an abuse of discretion. Jury instructions are not to be considered in isolation, but as a whole and in reference to each other. The instructions

4

must be a complete, accurate statement of the law which will not confuse or mislead the jury. Still, errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise.

Williams v. State, 891 N.E.2d 621, 630 (Ind. Ct. App. 2008) (citations and quotations omitted). When determining whether fundamental error occurred based on an incorrect jury instruction, "we look not to the erroneous instruction in isolation" but to "all relevant information given to the jury, including closing argument and other instructions." Boesch v. State, 778 N.E.2d 1276, 1279 (Ind. 2002) (citations omitted).

Rosales asserts that the trial court committed fundamental error because it "fail[ed] to instruct the jury regarding the specific intent requirement for an attempted murder conviction based on accomplice liability . . . ." Appellant's Br. at 5. In support, Rosales relies on Hopkins 759 N.E.2d at 637-39, and Tiller v. State, 896 N.E.2d 537, 541-43 (Ind. Ct. App. 2008). In those cases, our Supreme Court and this court recognized fundamental error when the trial court failed to instruct the jury that an accomplice to attempted murder must act with "specific intent to kill," instead instructed the jury that the accomplice need only act "knowingly," and the defendant's intent was at issue at trial. Hopkins, 759 N.E.2d at 637-39; Tiller, 896 N.E.2d at 541-43.

Both Hopkins and Tiller are progeny of our Supreme Court's decision in Spradlin v. State, 569 N.E.2d 948, 950 (Ind. 1991), in which the court held that, to convict a defendant of attempted murder, the State must prove that the defendant intended to kill the victim at the time the defendant took a substantial step toward committing murder. It is well established that a "Spradlin claim presents the potential for fundamental error."

5

<u>Ramsey v. State</u>, 723 N.E.2d 869, 872 (Ind. 2000) (emphasis added). Thus, stated another way, not every <u>Spradlin</u> claim amounts to fundamental error.

Rosales' reliance on <u>Hopkins</u> and <u>Tiller</u> is misplaced. In both cases, accomplice liability was the only theory of culpability supporting the defendant's conviction. <u>Hopkins</u>, 759 N.E.2d at 637; <u>Tiller</u>, 896 N.E.2d at 543. And in both cases the absence of an "intent to kill" jury instruction was fatal.

Here, the premise for Rosales' entire argument is that the jury must have found him guilty as an accomplice. But accomplice liability was not the exclusive theory for Rosales' conviction. Rather, the State's evidence thoroughly supports a jury finding that Rosales is guilty of attempted murder as the principal. In particular, Torres testified that Ball and Rosales jumped out of the van in the alley while he was heading home from a nearby business. Torres testified that Ball was unarmed, that he felt a blow to his head, and that, when he awoke after momentarily blacking out from the blow, he observed Rosales. Another witness, Watson, testified that she saw the van near the alley at the time of the attack and observed a Caucasian male and an Hispanic male exit the van. Watson saw that the Hispanic male was carrying a metal bat as he both entered into and fled from the alley. There is no dispute that Rosales is Hispanic and Ball is Caucasian. Following the attack, Rosales' aunt noticed that Rosales was unusually nervous, and he told her he wanted to leave for Chicago immediately. In her closing argument for the State, the prosecutor asserted that "this individual, this defendant, took that bat and swung it against Sergio Torres' head intending to kill him." Transcript at 518. And there is no question that the trial court properly instructed the jury that the crime of

6

attempted murder requires the defendant to have "the specific intent to kill another person." Id. at 557; see Echols v. State, 722 N.E.2d 805, 807-08 (Ind. 2000) (citing Taylor v. State, 616 N.E.2d 748, 749 (Ind. 1993)). In the alternative, the prosecutor also argued accomplice liability to the jury.

Again, when determining whether fundamental error occurred based on an incorrect jury instruction, "we look not to the erroneous instruction in isolation" but to "all relevant information given to the jury, including closing argument and other instructions." Boesch, 778 N.E.2d at 1279 (citations omitted). Here, unlike in Hopkins and Tiller, where accomplice liability was the only theory of liability and no intent to kill instruction was given, the evidence, arguments, and instructions support Rosales' conviction as the principal in the attempted murder of Torres. On appeal, Rosales does not argue that any evidence submitted to the jury suggests he acted as an accomplice, he does not address the State's argument to the jury that he was the principal, and he does not address the trial court's correct instruction on attempted murder. See Ind. Appellate Rule 46(A)(8)(a) (requiring the appellant's argument to be "supported by cogent reasoning" and "by citations to the . . . Appendix or parts of the Record on Appeal relied on"). In short, Rosales has failed to carry his burden on appeal of showing fundamental error.

Not only is Rosales' conviction supported by sufficient evidence, but the trial court's instructions on accomplice liability were harmless because, on the facts of this case, they were not essential to Rosales' conviction. Rather, the trial court's additional instructions for alternative liability on the theory that Rosales may have been the

7

accomplice were "mere surplusage . . . [and] simply did not matter . . . ." Thomas v. State, 827 N.E.2d 1131, 1134 (Ind. 2005). In Thomas, the trial court instructed the jury on both Knowing or Intentional Murder and Felony Murder,[2] but the court's instruction on Felony Murder erroneously omitted the elements of the underlying felony. The jury found the defendant guilty of "Murder," and "[n]either the jury's verdict nor the trial court's judgment of conviction or sentencing order distinguished between Knowing or Intentional Murder and Felony Murder." Id. at 1132-33.

On appeal, the defendant argued that his trial counsel's failure to object to the erroneous Felony Murder instruction denied him his right to effective assistance of counsel and entitled him to a new trial. Our Supreme Court rejected the defendant's argument and affirmed his conviction, stating:

> we perceive no harm to Thomas from the fact that his jury was not instructed on all of the elements of the offense of dealing in cocaine [the felony underlying the Felony Murder allegation]. This is because the jury was instructed on all of the elements of the offense of Knowing or Intentional Murder, with respect to which the reference to dealing in

---

[2] As our Supreme Court explained in Thomas:

Under Indiana law, a person can be guilty of the crime of Murder in several ways. One such way is by knowingly or intentionally killing another human being. A second is by killing another human being while committing or attempting to commit certain felonies such as arson, burglary, or dealing in cocaine. The first of these two ways is often referred to as the crime of "Knowing or Intentional Murder," and is established by Indiana Code § 35-42-1-1(1); the second as "Felony Murder," established by Indiana Code § 35-42-1-1(3). The difference between what the State must prove to obtain a conviction for each of these two types of murder is that, for Knowing or Intentional Murder, the State must prove that the killing was committed "knowingly or intentionally"; for Felony Murder, the State need not prove that the defendant acted with any particular mental state—the killing could be totally accidental—so long as the State does prove that the killing occurred while the defendant was committing (or attempting to commit) a specified felony.

827 N.E.2d at 1132-33.

cocaine was mere surplusage. When the jury found him guilty of Knowing or Intentional Murder, that is to say, that the State had met its burden of proof on each and every element of the offense of Knowing or Intentional Murder, <u>it simply did not matter how completely the jury was instructed on the offense of dealing in cocaine</u>.

<u>Id.</u> (emphases added).

Our Supreme Court's reasoning in <u>Thomas</u> applies in this case. Here, the trial court properly instructed the jury on all the elements of the offense of attempted murder, with respect to which the additional instructions on accomplice liability were mere surplusage. The jury's verdict form states that the jury found Rosales guilty of "Attempted Murder" without delineating whether the jury found him guilty as the principal or the accomplice. Appellant's App. at 32. Thus, when the jury found Rosales guilty of attempted murder, the State had met its burden of proof on each and every element of the offense of attempted murder, and "it simply does not matter how" the jury was instructed on accomplice liability. <u>Thomas</u>, 827 N.E.2d at 1132-33. The trial court's erroneous instructions on accomplice liability were "mere surplusage" and were, therefore, harmless. <u>Id.</u>

Harmless error, by definition, is "an error that does not affect the substantial rights of a party." <u>Lander v. State</u>, 762 N.E.2d 1208, 1213 (Ind. 2002). Where an error is harmless, we may not grant relief or reverse on appeal. App. R. 66. Harmless error is the exact opposite of fundamental error, which requires "clearly blatant violations of basic and elementary principles of due process." <u>Canaan</u>, 683 N.E.2d at 235 n.6.

"The trial court should not have included the word 'knowingly'" in its accomplice liability instructions. <u>Ramsey</u>, 723 N.E.2d at 872; Transcript at 563-64. But that is not

9

enough in itself to demonstrate fundamental error on the facts of this case. The court properly instructed the jury on finding Rosales guilty as the principal, and the evidence amply supports Rosales' conviction as the principal. Rosales' argument on appeal requires this court to speculate that the some or all of the jurors rejected this basis for liability. But, as then-Justice Dickson has explained, while "'the verdict may have been the result of compromise, or of a mistake on the part of the jury[,] . . . verdicts cannot be upset by speculation or inquiry into such matters.'" Beattie v. State, 924 N.E.2d 643, 645 (Ind. 2010) (quoting Dunn v. United States, 284 U.S. 390, 394 (1932)). Rather, "'a criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence.'" Id. at 649 (quoting United States v. Powell, 469 U.S. 57, 67 (1984)). The fundamental error exception to the contemporaneous objection rule requires a showing of "harm or potential for harm [that] is substantial." Brown, 929 N.E.2d at 207. Harm that is grounded in speculation is not substantial. See id. at 645.

## CONCLUSION

In sum, Rosales' argument on appeal must fail. There is more than sufficient evidence in the record that Rosales was the principal in the attack on Torres and, as such, the evidence supports the jury's verdict that Rosales committed attempted murder. Considering all relevant information given to the jury, including closing argument and other instructions, Boesch, 778 N.E.2d at 1279, we cannot say that the instruction error claimed by Rosales denied him "fundamental due process" or "ma[d]e a fair trial impossible" or constituted "clearly blatant violations of basic and elementary principles

10

of due process," <u>Brown</u>, 929 N.E.2d at 207.  As we have already noted, not every <u>Spradlin</u> claim amounts to fundamental error.  The fundamental error exception is available only in "egregious circumstances."  <u>Id.</u>  The record shows that Rosales was fairly tried and convicted.

Affirmed.

BAKER, J., concurs.

CRONE, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

RUBEN ROSALES,              )
                           )
     Appellant-Defendant,     )
                           )
         vs.            )     No. 48A02-1303-CR-229
                           )
STATE OF INDIANA,        )
                           )
     Appellee-Plaintiff.       )

**CRONE, Judge, dissenting**

It is undisputed that the trial court erred in instructing the jury on accomplice liability, and it is also undisputed that the record is silent regarding whether the jury found Rosales guilty of attempted murder as an accomplice or as a principal. Relying on *Thomas*, the majority concludes that the error was not fundamental. I respectfully disagree.

The majority states that "when the jury found Rosales guilty of attempted murder, the State had met its burden of proof on each and every element of the offense of attempted murder, and it 'simply does not matter how' the jury was instructed on accomplice liability." Slip op. at 9 (quoting *Thomas*, 827 N.E.2d at 1132-33). I believe

12

that it very much *does* matter in this case. In *Thomas*, both the charging information and the jury instructions contained each of the elements of "Knowing or Intentional Murder." Here, however, Rosales was not charged under an accomplice liability theory, and the preliminary instructions did not mention accomplice liability. Only the final instructions mentioned accomplice liability, and those instructions were erroneous because they failed to inform the jury that an accomplice to attempted murder must act with the specific intent to kill. As Rosales states, "the instructions provided the jury two distinct bases for finding [him] guilty of attempted murder, one where he was required to have an intent to kill and one which required no intent to kill whatever, only the aiding inducing or causing of a crime." Appellant's Reply Br. at 5. Although the jurors could have convicted Rosales as a principal, it is equally likely that they could have convicted him as an accomplice based on an erroneous instruction. In my view, the erroneous instruction made a fair trial impossible and therefore constituted fundamental error. Consequently, I would reverse Rosales's attempted murder conviction and remand for a new trial.