ATTORNEY FOR APPELLANT
John B. Steinhart
Lafayette, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Eric P. Babbs
Deputy Attorneys General
Indianapolis, Indiana

## In the
## Indiana Supreme Court



No. 48S02-1404-CR-297

RUBEN ROSALES,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Madison County Circuit Court, No. 48C03-1207-FA-1240
The Honorable Thomas Newman, Jr., Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 48A02-1303-CR-229

**January 15, 2015**

**David, Justice.**

A jury instruction setting forth the elements of attempted murder must inform the jury that the State must prove beyond a reasonable doubt that the defendant, with specific intent to kill the victim, engaged in conduct constituting a substantial step toward such killing. Spradlin v. State, 569 N.E.2d 948, 950 (Ind. 1991). Similarly, when attempted murder is premised on accomplice liability, the jury is required to be instructed that the State must prove beyond a

reasonable doubt that the defendant acted with specific intent to kill. Hopkins v. State, 759 N.E.2d 633, 637 (Ind. 2001) (citing Bethel v. State, 730 N.E.2d 1242, 1246 (Ind. 2000)). But in this case, although the trial court properly instructed Ruben Rosales's jury on the elements of attempted murder, it failed to inform them that the State had to establish beyond a reasonable doubt that Rosales acted with specific intent to kill when he knowingly or intentionally aided, induced, or caused another person to attempt murder. This error was compounded during closing arguments when the State repeatedly insisted that specific intent to kill was not required for accomplice liability to attempted murder. Subsequently, the jury found Rosales guilty of attempted murder, but the general verdict form made it impossible to determine whether direct or accomplice liability formed the basis of their collective decision.

On appeal, Rosales argues that the trial court committed fundamental error by giving an instruction permitting the jury to convict him of attempted murder as an accomplice without the specific intent to kill. Our careful review of our case law leads us to conclude that under the circumstances of this case Rosales is correct.

## Facts and Procedural History

In June of 2012, eighteen-year-old Rosales was a member of the Latin Kings gang in Anderson, Indiana. Fifteen-year-old Sergio Torres was affiliated with rival gang Serrano 13, which had been harassing Rosales's girlfriend by making threats against her and vandalizing her house. On the afternoon of June 27, 2012, Torres was walking down an alley when a van carrying Rosales—who is Hispanic—and Donovan Ball—who is Caucasian and was a close associate of the Latin Kings—pulled in behind him. Ball, unarmed, exited the van. As Torres faced Ball, he felt a sharp blow to his head and lost consciousness. When he regained consciousness, he observed Ball and Rosales running back to the van, which then sped away.

Nearby witness Melamekia Watson would later testify that she observed a Caucasian man and a Latino man carrying a metal baseball bat exit the van and run down the alley. According

2

to Watson, the same men ran out of the alley "like they [were] on a mission" and got back into the van. (Tr. at 268–69.) The Latino man was still carrying the bat.

When police arrived at the scene, Torres was bleeding profusely from lacerations on his head and slipping in and out of consciousness. He was transported to an Anderson hospital, where Nurse Cheryl Reese and Doctor Myron Bielski observed what they considered to be life-threatening injuries: multiple skull fractures, a subdural hematoma, and bleeding of the brain. Torres underwent brain surgery but continued to suffer headaches as a result of the trauma.

The following day, Rosales, appearing nervous, told his aunt Michelle Rosales that he needed to leave for Chicago because he "didn't want to see himself get in anymore trouble." (Tr. at 325–26.) She drove him to an Indianapolis bus station and purchased a ticket for him. When the cashier asked who was traveling, Ruben Rosales gave a fake name.

On her way home, Michelle Rosales called a mutual acquaintance and inquired about the cause of her nephew's behavior. After the acquaintance informed her of the attack, she called police, who arrested Ruben Rosales at the bus station.

The State then charged Rosales with class A felony attempted murder[1] and class D felony criminal gang participation.[2] At his jury trial and during final instructions, the trial court instructed the jury on attempted murder: "the crime of attempted murder is defined as follows: a person attempts to commit a murder when, acting with the specific intent to kill another person, he engages in conduct that constitutes a substantial step toward kill[ing] that person." (Tr. at 557.) Though Rosales was not charged as an accomplice to attempted murder and his attempted murder charge was not explicitly premised on a theory of accomplice liability, the trial court also instructed the jury on accomplice liability as follows: "[a] person who knowingly or intentionally aids, induces or causes another person to commit an offense commits that offense . . . [a]n

---

[1] Ind. Code § 35-41-5-1(a) (2008) (now codified as Ind. Code § 35-41-5-1(a) (effective July 1, 2014)) and Ind. Code § 35-42-1-1(1) (2008) (now codified as Ind. Code § 35-42-1-1(1) (effective July 1, 2014)).
[2] Ind. Code § 35-45-9-3 (2008) (now codified as Ind. Code § 35-45-9-3 (effective July 1, 2014)).

accomplice is liable for the acts of the principal which, even if not a part of their original plan, are probable and natural consequences thereof." (Tr. at 563.)

During closing arguments, the State argued both theories of liability. As we discuss in detail below, the State repeatedly relied on the incorrect accomplice liability instruction. For example, the State argued that it "only has to prove that one person intended for death to occur." (Tr. at 518.) Additionally, the verdict form did not distinguish between Rosales's potential direct liability or accomplice liability for the attempted murder of Torres.

Rosales's jury found him guilty as charged, and the trial court sentenced him to an aggregate term of fifty years executed in the Indiana Department of Correction. He then appealed his attempted murder conviction, claiming that the trial court's inaccurate jury instruction on accomplice liability as a basis for attempted murder constituted fundamental error. According to Rosales, under Hopkins, the trial court was required to instruct the jury that it must find that he had the *specific intent to kill* Torres when he knowingly or intentionally aided, induced, or caused another, presumably Ball, to attempt to murder Torres. 759 N.E.2d at 637.

A divided panel of the Court of Appeals affirmed the trial court. Rosales v. State, 3 N.E.3d 1014, 1019 (Ind. Ct. App. 2014) (Crone, J., dissenting). We granted Rosales's petition to transfer,[3] thereby vacating the opinion below pursuant to Ind. Appellate Rule 58(A), in order to resolve an issue of first impression before this Court: whether an accomplice liability instruction was fundamentally erroneous for not stating that an accomplice to attempted murder must have the specific intent to kill when he or she knowingly or intentionally aids, induces, or causes another to attempt murder, where it is unknown if the defendant was convicted of attempted murder on the basis of accomplice liability or direct liability.

**Standard of Review**

---

[3] Rosales v. State, 7 N.E.3d 992 (table) (2014).

As "[t]he manner of instructing a jury lies largely within the discretion of the trial court," this Court reverses a trial court's jury instruction "only for an abuse of discretion." Henson v. State, 786 N.E.2d 274, 277 (Ind. 2003). But because Rosales did not object to the accomplice liability instruction given by the trial court or tender his own accomplice liability instruction, he waived his right to appeal the instruction provided to the jury. Hopkins, 759 N.E.2d at 638. Consequently, we "will only reverse the trial court if the trial court committed error that was fundamental," Id., in instructing the jury on the elements of accomplice liability when attempted murder is charged. Fundamental error "is a substantial, blatant violation of due process" that "must be so prejudicial to the rights of a defendant as to make a fair trial impossible." Id. (internal citations omitted).

**Discussion**

## I.  Jury Instructions on either Direct or Accomplice Liability for Attempted Murder

First, we look to our precedent on instructing juries when a defendant is tried, under either a theory of direct liability *or* accomplice liability, for attempted murder. In Spradlin, we determined that a jury instruction

> which purports to set forth the elements which must be proven in order to convict of the crime of attempted murder must inform the jury that the State must prove beyond a reasonable doubt that the defendant, *with intent to kill the victim*, engaged in conduct which was a substantial step toward such killing.

569 N.E.2d at 950 (emphasis added). This requirement that the State establish the defendant's specific intent to kill in order to prove him or her directly liable for attempted murder stems from "the stringent penalties for attempted murder and the ambiguity often involved in its proof." Hopkins, 759 N.E.2d at 637. Thus, we have "singled out attempted murder for special treatment" in the form of the State's heightened mens rea showing. Id.

The State's need to demonstrate the defendant's specific intent to kill remains when the State seeks a conviction for attempted murder under an accomplice liability theory. Specifically,

5

the State must prove beyond a reasonable doubt: "(1) that the accomplice, acting with the specific intent to kill, took a substantial step toward the commission of murder, and (2) that the defendant, acting with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused the accomplice to commit the crime of attempted murder." Id. (quoting Bethel, 730 N.E.2d at 1246).

Despite these requirements, some trial courts have still instructed juries that "knowing" is a sufficient mens rea to establish attempted murder. For example, in Williams v. State, the trial court gave this instruction: "[t]o convict the defendant of the crime of attempted murder, the State must have proved the following elements: 1. [t]he defendant *knowingly or intentionally* 2. took a substantial step to accomplish 3. a *knowing or intentional killing* of [the victim]." 737 N.E.2d 734, 737 (Ind. 2000). On review, we found this instruction fundamentally erroneous; moreover, we recognized that "[w]e have consistently held that this form of attempted murder instruction misinforms a jury as to the appropriate mens rea and thus constitutes fundamental error." Id. (listing a series of cases finding "[f]undamental Spradlin error" where jury instruction with "knowingly or intentionally" or "knowingly" mens rea was deemed sufficient to establish mens rea for attempted murder).

However, we acknowledged that "there have been cases where, despite clear Spradlin error, we did not vacate an attempted murder conviction because (i) the intent of the perpetrator was not a central issue at trial; (ii) the instructions as a whole sufficiently suggested the requirement of intent to kill; or (iii) both." Id. (footnotes omitted).[4] Stated differently, when the required specific intent to kill language is not given in a jury instruction, but where there has been only one theory of liability for attempted murder alleged *and* (1) the identity, and not the intent, of the perpetrator is the central issue; *and/or* (2) the requirement of specific intent to kill was set forth in other instructions, we have deemed such an error harmless under Spradlin.

---

[4] The three cases cited in Williams—Swallows v. State, 674 N.E.2d 1317, 1318 (Ind. 1996); Ramsey v. State, 723 N.E.2d 869, 872–73 (Ind. 2000); and Jackson v. State, 575 N.E.2d 617, 621 (Ind. 1991)— involved only direct liability theories of attempted murder.

6

But our case law only addresses either a defendant's direct liability *or* accomplice liability for attempted murder as the *sole* theory of liability.[5]  Here, in addition to instructing the jury (correctly) on the elements of attempted murder under a theory of direct liability, the trial court gave an accomplice liability instruction that, under Hopkins, failed to set forth that an accomplice must have the *specific intent to kill* when he or she knowingly or intentionally aids, induces, or causes another to attempt to commit murder.  And because of the general verdict form, we do not know the theory of liability under which the jury convicted Rosales of attempted murder.  We must now determine whether this improper accomplice liability instruction constituted fundamental error under the circumstances of this case.

## II.    Jury Instruction Omitting Specific Intent to Kill Requirement Is Fundamentally Erroneous in this Instance

To resolve this issue of first impression, Rosales urges us to look to precedent on accomplice liability.  He contends that because his intent to kill was at issue, the trial court's failure to properly instruct the jury led to the possibility that he was convicted of attempted murder as an accomplice without the specific intent to kill—but based instead on his *knowingly* aiding, inducing, or causing another person to attempt to murder Torres—and thus was fundamentally erroneous.

In response, the State argues that the trial court's preliminary[6] and final[7] instructions on attempted murder adequately informed the jury that in order to convict Rosales of attempted

---

[5]   See, for example, Hopkins, 759 N.E.2d at 637 (accomplice liability); Williams, 737 N.E.2d at 741 (accomplice liability); Ramsey, 723 N.E.2d at 871 (direct liability); Swallows, 674 N.E.2d at 1318 (direct liability); and Jackson, 575 N.E.2d at 620 (direct liability).

[6]   The trial court read the jury the following relevant preliminary instruction: "the State of Indiana has charged the defendant with . . . Count II, Attempted Murder, on or about June 27, 2012, in Madison County, State of Indiana, Ruben Mezar Rosales, did intentionally attempt to kill another human being, to-wit: Sergio Torres." (Tr. at 212–13.)

[7]   As previously stated, during final instructions, the trial court repeated the language of Count II and read the jury the following applicable instruction: "the crime of attempted murder is defined as follows: a person attempts to commit a murder when, acting with the specific intent to kill another person, he engages in conduct that constitutes a substantial step toward kill[ing] that person." (Tr. at 555–57.)

7

murder the State must prove that Rosales had the specific intent to kill Torres. Additionally, the State reasons that the inaccurate accomplice liability instruction did not constitute fundamental error because of "strong" evidence presented at trial that Rosales was the principal in the attack, for example the testimony of Torres and witness Melamekia Watson, and Rosales's attempted flight after the attack. (Appellee's Br. at 11–12.) Lastly, the State insists that "there could be no real dispute as to the intent of the perpetrator of this attack in light of the weapon used, the part of Torres' body that was struck, and the severity of Torres' injuries. . . . the baseball bat was obviously used in a manner to cause death." (Appellee's Br. at 12.) According to the State, "in light of the substantial evidence that Rosales attacked Torres with a baseball bat and fractured his skull, the accomplice liability instruction was not so prejudicial as to make a fair trial impossible." (Appellee's Br. at 12 (citing Cowherd v. State, 791 N.E.2d 833, 841 (Ind. Ct. App. 2003), trans. denied).) For these reasons, the State maintains that the faulty accomplice liability instruction amounts to no more than harmless error.

Faced with these competing arguments, a majority of the Court of Appeals concluded that Rosales failed to demonstrate that the inaccurate jury instruction on accomplice liability was fundamentally erroneous. Rosales, 3 N.E.3d at 1018.

> Not only is Rosales' conviction supported by sufficient evidence, but the trial court's instructions on accomplice liability were harmless because, on the facts of this case, they were not essential to Rosales' conviction. Rather, the trial court's additional instructions for alternative liability on the theory that Rosales may have been the accomplice were "mere surplusage . . . [and] simply did not matter . . . ." Thomas v. State, 827 N.E.2d 1131, 1134 (Ind. 2005).

Rosales, 3 N.E.3d at 1018. Dissenting, Judge Crone believed that the incorrect accomplice liability instruction constituted fundamental error due to the possibility that Rosales's jury could have convicted him as an accomplice to attempted murder without finding that he possessed the necessary specific intent to kill. Id. at 1020.

8

Looking for guidance on an issue of first impression, the majority below relied on Thomas to reach its conclusion. However, in this case, reliance on Thomas was misplaced. We base our conclusion on the heightened mens rea showing required by the State when an attempted murder conviction is sought—and attempted murder was not charged in Thomas. There, the charging information alleged, among other things, that Thomas was guilty of felony murder because he had "knowingly or intentionally kill[ed] another human being, namely Sheldon Byrd while dealing in cocaine or a narcotic drug." Thomas, 827 N.E.2d at 1133. Thus, Thomas's charging information blended the essential elements of two crimes: it set forth all of the elements necessary to convict Thomas of a "knowing or intentional" murder *as well as* a felony that would support a conviction for felony murder.[8] Id.

Not surprisingly, "there was a fair amount of imprecision" at Thomas's trial over whether he was being tried for a "knowing and intentional" murder or for felony murder. Id. The confusion carried over into Thomas's jury instructions when the trial court read the jury the following preliminary and final instruction: "A person who: knowingly or intentionally kills another human being; while committing or attempting to commit: (A) dealing in cocaine or a narcotic drug (Ind. Code [§] 35-48-4-1), commits murder, a felony." Id. The jury subsequently returned a verdict of guilty. Id.

On transfer, we reasoned that "[w]hile the jury verdict, court judgment, and sentencing order were silent as to whether Thomas was convicted of [k]nowing or [i]ntentional [m]urder or [f]elony [m]urder, both the charging information and jury instructions contain each of the elements of [k]nowing or [i]ntentional [m]urder." Id. at 1133–34. Because the jury was instructed on *all* of the elements of a "knowing or intentional" murder, we deemed the stray reference to dealing in cocaine to be "mere surplusage," and thus harmless error, and affirmed Thomas's conviction for "knowing and intentional" murder. Id. at 1134.

---

[8] Felony murder, of course, does not require a knowing or intentional killing, but only a killing done while committing or attempting to commit a prescribed felony, such as dealing in cocaine or a narcotic drug. Ind. Code § 35-42-1-1 (effective July 1, 2014); Griffin v. State, 717 N.E.2d 73, 85 (Ind. 1999).

9

Extending our analysis in <u>Thomas</u>, a majority of the Court of Appeals found that "the trial court properly instructed the jury on *all* the elements of the offense of attempted murder, with respect to which the additional instructions on accomplice liability were mere surplusage . . . . 'it simply [did] not matter how' the jury was instructed on accomplice liability." <u>Rosales</u>, 3 N.E.3d at 1018–19 (quoting <u>Thomas</u>, 827 N.E.2d at 1134) (emphasis added).

However, we do not agree that the incorrect accomplice liability instruction was "mere surplusage" or an unnecessary extra. To the contrary, accomplice liability was *a distinct basis* for the jury to convict Rosales of attempted murder. And although the trial court did correctly instruct the jury on direct liability for attempted murder, here the jury was not instructed as to *all* the elements necessary to properly convict Rosales of attempted murder under an accomplice liability theory. Because we have no way of discerning which theory of liability the jury used to find Rosales guilty of attempted murder, "it very much *does* matter in this case" how the jury was instructed on accomplice liability, as Judge Crone stated. <u>Rosales</u>, 3 N.E.3d at 1020.

Under <u>Spradlin</u>, this instruction is plainly insufficient, as a proper attempted murder conviction requires a finding of Rosales's *specific intent to kill* by the jury. Such an instruction is also insufficient under <u>Hopkins</u>, which dictates that the State must prove beyond a reasonable doubt, among other things, that Rosales, "acting with the *specific intent that the killing occur*, knowingly or intentionally aided, induced, or caused [another person] to commit the crime of attempted murder." 759 N.E.2d at 637 (quoting <u>Bethel</u>, 730 N.E.2d at 1246) (emphasis added). Accordingly, the trial court erred in instructing the jury that Rosales could be convicted of attempted murder as an accomplice without the specific intent to kill.

Furthermore, the general verdict form did not allow the jury foreman to mark the basis for Rosales's attempted murder conviction. As such, the jury's verdict may have rested exclusively on accomplice liability grounds (including a finding of Rosales's "knowing or intentional" mens rea), solely on direct liability grounds (including a finding of his "specific intent to kill"), or a combination thereof. We do not know how many jurors, if any, voted to

10

convict Rosales of attempted murder under an accomplice liability theory with a "knowing" mens rea. But under the accomplice liability instruction given, they could have.

However, our conclusion that the trial court erred in giving the faulty accomplice liability instruction does not end our inquiry. As previously stated, Hopkins is rooted in our policy judgment that "the stringent penalties for attempted murder and the ambiguity often involved in its proof" make it appropriate to "single[] out attempted murder for special treatment." 759 N.E.2d at 637. Thus, the mere possibility of prejudice to Rosales from the inaccurate instruction does not justify reversal of his conviction without a showing that he incurred *actual* prejudice. Our fundamental error inquiry therefore requires us to consider whether the error was prejudicial enough under the circumstances of this case to make a fair trial impossible.

Here, we find that the inaccurate accomplice liability instruction was harmful enough to constitute fundamental error because the State's closing arguments repeatedly told the jury that specific intent to kill was *not* required for accomplice liability. In its principal argument, which barely spans ten pages, the State told the jury that "you don't have to concern yourselves with who had the bat" (Tr. at 514), that whether Rosales or Donovan Ball "swung that bat . . . doesn't matter under the law" (Tr. at 518), and that—directly contrary to Hopkins—"the State only has to prove that one person intended for death to occur." (Tr. at 518.)

Returning to that inaccurate statement of law in its rebuttal, the State argued that "the two . . . people in the van are just as guilty no matter who swung that bat, whether they both swung the bat." (Tr. at 551.) The State continued that "[i]f [Rosales] helps, he's guilty, whether he swung the bat or not, he is responsible for the consequences of the other people that he's involved in the criminal activity with, period." (Tr. at 552.) Though each of these statements may hold true for most accomplice liability offenses, for attempted murder premised on a theory of accomplice liability, Hopkins unequivocally holds otherwise.

If not for the State's repeated reliance on the inaccurate accomplice liability instruction, the error in this case likely would not rise to the level of fundamental. We agree with the State

11

that "the evidence was strong that Rosales was the principal in this attack," and that the manner in which the victim was beaten raises no serious question of the principal's intent to kill. (Appellee's Br. at 11–12.)

However, considering that the getaway driver was also a Hispanic man, Rosales was not necessarily the Hispanic man Melamekia Watson observed carrying the bat both before and after the attack on Torres. Furthermore, an accomplice may not necessarily have known that the bat would be used to inflict life-threatening injuries on Torres.

To be sure, there were also ample reasons for the jury to conclude that Rosales attacked Torres with the specific intent to kill him, so if the State had not repeatedly misstated the law we likely would have found an insufficient likelihood of prejudice to Rosales from the instruction. But the State's repeated insistence that Rosales's specific intent to kill did not matter, coupled with the inaccurate jury instruction on accomplice liability, is enough to make a fair trial impossible and constitute fundamental error. We therefore reverse Rosales's conviction for attempted murder and remand this case to the trial court for a new trial.

Nevertheless, going forward, when an individual is tried for attempted murder as an accomplice, we recommend that Pattern Jury Instruction 2.11(a) be given. This instruction—titled "Aiding, Inducing or Causing Attempted Murder"—instructs the jury, among other things, that the State must prove beyond a reasonable doubt that the defendant acted with the specific intent to kill when he or she knowingly or intentionally aided, induced, or caused another person to engage in conduct constituting a substantial step toward attempting to murder another person. Consistent with our case law, this instruction informs the jury of the State's burden to prove beyond a reasonable doubt *all* the elements of attempted murder under an accomplice liability theory—especially the defendant's specific intent to kill—in order to convict the defendant. And when the defendant is tried under both direct *and* accomplice theories of liability for attempted murder, this instruction becomes crucial to safeguarding against the error we found in this case.

**Conclusion**

12

We reverse Rosales's conviction for attempted murder and remand to the trial court for a new trial and other proceedings consistent with this opinion.


Rush, C.J., Dickson, Rucker, and Massa, J.J., concur.