## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 31 2016, 9:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Sean P. Hilgendorf
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Erique Raggs,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

August 31, 2016

Court of Appeals Cause No.
71A05-1510-CR-1831

Appeal from the St. Joseph Superior Court

The Honorable Jerome Frese, Judge

Trial Court Cause No.
71D03-1409-MR-11

**Barnes, Judge.**

# Case Summary

[1] Erique Raggs appeals his convictions for murder and attempted murder. We affirm.

# Issue

[2] The issues before us are:

    I.      whether there is sufficient evidence to support Raggs's convictions; and

    II.     whether the trial court properly instructed the jury regarding the elements of attempted murder.

# Facts

[3] The evidence most favorable to the convictions is that, on September 13, 2014, Tony and Angela Shead had a small gathering at their house. Their guests included Angela's sister, Debbie Wyche; Debbie's fiancé, Lonnell Eggerson; Tony and Angela's daughter, Antonisha Shead; Antonisha's cousin, Dorothy Tyler; and Dorothy's boyfriend, Raggs. Dorothy and Raggs offered to take the rest of the group out to a sports bar to watch a boxing match. Angela drove the group there in her and Tony's van. While at the bar, Dorothy and Raggs got into an argument, and Raggs pulled Dorothy out of the bar. Tony attempted to calm Raggs down. Eventually, the group returned to the van, and Angela began driving to Dorothy's grandmother's house in South Bend, where Dorothy lived, because of the difficulties Raggs was causing. In the van,

Dorothy and Raggs continued arguing, and Debbie attempted to intervene to calm Raggs down.

[4] Angela dropped Dorothy and Raggs off at Dorothy's grandmother's house, where Dorothy's cousin Marquis Scott also was staying. Tony, Angela, Debbie, Lonnell, and Antonisha stayed parked outside the house in the van and did not immediately drive away. After two to three minutes, Dorothy came running out of the house, screaming "he's trying to kill me." Tr. p. 88. Raggs was following Dorothy out of the house, and Marquis was following Raggs. In the house, Marquis had been trying to calm Raggs down, and Raggs had pushed Marquis. Outside, Raggs pushed Dorothy to the ground and was on top of her. Marquis pulled Raggs off of Dorothy, and the two briefly wrestled.

[5] The occupants of the van got out to break up the fight between Marquis and Raggs. Antonisha eventually managed to break up the fight. Raggs did not appear to be injured, and he and Antonisha walked down the street, separating themselves from the rest of the group. Raggs told Antonisha that he did not have his cell phone, and she offered to go back to Dorothy's grandmother's house to retrieve it for him. After giving Raggs his cell phone, Antonisha walked back to the van, where the group gathered to leave because they were afraid of Raggs. Angela was in the driver's seat, and Tony was in the front passenger seat. Debbie sat behind Tony, and Lonnell sat behind Angela. Antonisha and Dorothy were in the van's third row. Marquis was going to follow the van in his own car. Before driving away, Dorothy realized she had

forgotten to lock up her grandmother's house, and she and Antonisha started to get out of the van to do so.

[6] As Dorothy was preparing to exit the van, Raggs approached it with a drawn handgun that appeared to be a Glock nine millimeter. Raggs first pointed the gun at Marquis, then approached the van when he saw Dorothy in it. Raggs looked into the van with the gun pointed and said, "you mother f***ers talk s***, what you gonna say now?" Tr. p. 292. Tony then put the van into gear for Angela and she began driving away, with the side door still open. Raggs began firing into the van when he was still standing directly next to it, mere inches away, and continued firing until the chamber was empty. He continued pulling the trigger even after it was empty.

[7] After driving a short distance, Angela pulled over when it was apparent that Tony had been shot. A bullet had entered Tony's right side and pierced his liver, right lung, heart, and aorta, killing him. Additionally, Dorothy was shot in the right hip and abdomen, but she survived.

[8] On September 15, 2014, the State charged Raggs with murder, Level 1 felony attempted murder, and Level 3 felony aggravated battery; the State later dismissed the aggravated battery charge. Raggs fled to Chicago after the shooting, taking the gun with him, and he was not arrested until October 21, 2014, in Chicago. After being apprehended and questioned by police, Raggs denied shooting at the van and denied even being present at the time, claiming he had left the area after the fight with Marquis and had not returned. While

incarcerated awaiting trial, Raggs approached two inmates and asked them to provide alibis for him, but they did not do so. The murder weapon was never found. However, Raggs told one of the inmates that he used a nine millimeter to carry out the shooting.

[9] At Raggs's jury trial, the trial court read the charging information to the jury as part of its preliminarily instructions. Regarding attempted murder, the information alleged:

> On or about September 14, 2014, in St. Joseph County, State of Indiana, Erique Raggs did intentionally attempt to commit the crime of Murder by shooting at Dorothy Tyler, which conduct constituted a substantial step toward the commission of the crime of Murder, which is to knowingly kill another human being.

*Id.* at 40. The trial court repeated the language of the charging information to the jury during final instructions. It also instructed the jury on the definitions of "knowingly" and "intentionally." The trial court further instructed the jury as follows:

> To convict the defendant Erique Raggs of Count II, Attempted Murder, Level 1 felony, the State must have proved each of the following essential elements beyond a reasonable doubt:
>
> One, the defendant Erique Raggs; two, acting with the specific intent to kill Dorothy Tyler; three, shot at Dorothy Tyler; four, which was conduct constituting a substantial step toward commission of the intended crime of murder.

> If the State failed to prove any one or more of these elements beyond a reasonable doubt, you must find the defendant not guilty of Count II, Attempted Murder, Level 1 felony.

*Id.* at 559-60. Raggs did not object to the trial court's instructions.

[10] During closing argument, the prosecutor discussed the concept of "specific intent to kill" with the jury:

> With the Murder charge we talked about knowingly. With the Attempted Murder charge we need to talk about specific intent. That's the language in an Attempted Murder charge.
>
> Why? Because if somebody is attempting to kill somebody, how do you really know that they want them dead? The law wants to be really sure that there's enough evidence for you to know that they wanted them—they were actually trying to kill him. They want you to take a good hard look at that and make sure that there's enough evidence to show that that was his intent. It's a step above knowingly actually.
>
> A person engages in conduct intentionally if when he engages in that conduct it is his conscious objective to do so. Conscious objective. It's what you want to do. You're not just aware of a high probability that you're doing so. That's your aim.
>
> With a specific intent to kill Dorothy Tyler.
>
> Ladies and gentlemen, the specific intent to kill may be formed as instantaneously as pulling the trigger. The defendant tried until he ran out of bullets. The gun was clicking. He did it fast. The only thing that saved Dorothy Tyler was the fact that, A, Angela drove away, and, B, that the defendant didn't get a lucky shot at her. It wasn't a fatal wound.

*Id.* at 528-29.  As for Raggs, his attorney's closing argument consisted solely of a denial that he was the gunman and that he was not present at the time of the shooting.

The jury found Raggs guilty of both murder and attempted murder.  The trial court entered convictions and sentenced him accordingly.  Raggs now appeals.

# Analysis

## I. Sufficiency of the Evidence

Raggs first questions whether there is sufficient evidence to support his convictions for murder and attempted murder.  When reviewing a claim of insufficient evidence we neither reweigh the evidence nor judge the credibility of the witnesses.  *Suggs v. State*, 51 N.E.3d 1190, 1193 (Ind. 2016).  We will consider only the evidence and reasonable inferences therefrom that support the conviction.  *Id.*  We will affirm if there is probative evidence from which a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt.  *Id.*

Raggs specifically contends there was insufficient evidence of his mens rea with respect to killing Tony and attempting to kill Dorothy.[1]  In order to convict Raggs of murder as charged, the State had to prove that he knowingly or intentionally killed Tony.  *See* Ind. Code § 35-42-1-1(1).  In order to convict

---

[1] On appeal, Raggs makes no attempt to argue that he did not shoot Tony and Dorothy.

Raggs of the attempted murder of Dorothy, the State was required to prove that, acting with the specific intent to kill, he engaged in conduct that was a substantial step toward such killing. *Rosales v. State*, 23 N.E.3d 8, 11-12 (Ind. 2015) (quoting *Spradlin v. State*, 569 N.E.2d 948, 950 (Ind. 1991)). The heightened requirement of proof of specific intent to kill in attempted murder cases is based upon the stringent penalties for attempted murder and ambiguities often involved in proving such a charge. *Id.* at 12 (quoting *Hopkins v. State*, 759 N.E.2d 633, 637 (Ind. 2001)). Thus, although the State only was required to prove that Raggs knowingly killed Tony, it was required to prove that he shot Dorothy with the specific intent to kill her. We will focus our analysis upon whether there was sufficient evidence of Raggs's intent to kill with respect to both Tony and Dorothy.

[14] "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." I.C. § 35-41-2-2(a). A fact finder may infer specific intent to kill from the nature of an attack and the circumstances surrounding the crime. *Kiefer v. State*, 761 N.E.2d 802, 805 (Ind. 2002). Such intent may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm. *Id.* A defendant's motive to kill, or lack thereof, also is a factor that may be considered, though motive is not an element of the crime. *Id.* at 806. Discharging a weapon in the direction of a victim is substantial evidence from which a fact finder could infer intent to kill. *Corbin v. State*, 840 N.E.2d 424, 429 (Ind. Ct. App. 2006). Where discharge of a firearm is concerned, the distance between the defendant and

victim is also a relevant consideration in determining whether the defendant specifically intended to kill the victim. *See Richeson v. State*, 704 N.E.2d 1008, 1010 (Ind. 1998). The State need not prove that the defendant intended to kill the actual victim, but only that the defendant intended to kill someone. *Blanche v. State*, 690 N.E.2d 709, 712 (Ind. 1998) (citing *Straub v. State*, 567 N.E.2d 87, 90-91 (Ind. 1991)).

[15] Here, there is no evidence Raggs expressly stated that he intended to kill Tony or Dorothy, or anyone for that matter. Regardless, we believe there is ample circumstantial evidence from which the jury could have concluded that Raggs specifically intended to kill both of them. Raggs had been arguing with Dorothy and others in the group for some time prior to the shooting. Immediately prior to the shooting, Raggs's behavior was such that Dorothy felt her life was threatened, and he was involved in a physical fight with Marquis. Raggs approached the van, pointing a firearm at members of the group as they were preparing to leave, yelling profanities, and asking, "what you gonna say now?" Tr. p. 292. Raggs looked into the van, then opened fire into it when he was standing mere inches away. Raggs continued firing as Angela drove away until the gun's chamber was empty, and he continued pulling the trigger thereafter. Given the circumstances leading up to the shooting, Raggs's statements immediately beforehand, his proximity to the van when he began shooting, and his firing of multiple shots directly into the van, there is sufficient evidence Raggs specifically intended to shoot and kill both Tony and Dorothy; the other occupants of the van were fortunate not to have been struck by any

bullets. Thus, there is sufficient evidence to support Raggs's convictions for murder and attempted murder.

## II. Jury Instructions

Next, Raggs contends the trial court committed fundamental error in instructing the jury on the elements of attempted murder. The manner of instructing a jury is largely within the trial court's discretion, and we will reverse a conviction based on alleged instructional error only for an abuse of that discretion. *Rosales*, 23 N.E.3d at 11. When a defendant fails to object to alleged instructional error, he or she must establish that the trial court's error was fundamental before we will reverse. *Id.* "Fundamental error 'is a substantial, blatant violation of due process' that 'must be so prejudicial to the rights of a defendant as to make a fair trial impossible.'" *Id.* (quoting *Hopkins*, 759 N.E.2d at 638).

A proper instruction for attempted murder must inform the jury that in order to convict the defendant, the State is required to prove beyond a reasonable doubt that the defendant, acting with intent to kill the victim, engaged in conduct that was a substantial step toward such killing. *Spradlin*, 569 N.E.2d at 950. It is erroneous to instruct a jury that it can convict a defendant of attempted murder based upon a "knowing" mens rea, and such error may amount to fundamental error. *Ramsey v. State*, 723 N.E.2d 869, 872 (Ind. 2000). An erroneous reference to a "knowing" mens rea in an attempted murder instruction may not be fundamental if (1) the intent of the perpetrator was not a central issue at trial; (2) the instructions as a whole sufficiently suggested the requirement of intent to

kill; or (3) both. *Williams v. State*, 737 N.E.3d 734, 737 (Ind. 2000). Another relevant consideration is whether the State relied upon the erroneous instructional language during arguments before the jury. *See Rosales*, 23 N.E.3d at 15-16 (holding erroneous accomplice liability attempted murder instructions may not have amounted to fundamental error if the State had not repeatedly relied upon the erroneous language during closing argument).

[18] Here, Raggs notes that the jury instructions twice referred to a "knowing" mens rea for attempted murder, versus once correctly reciting the requirement of specific intent to kill. We do not believe the mere fact that "knowing" was twice used erroneously amounts to fundamental error. To the extent there was error in the trial court's instructions regarding attempted murder, it was solely through re-reading of the charging information language in both the preliminary and final instructions. When more precisely detailing the elements of attempted murder and what the State had to prove in order to obtain a conviction, the language used by the trial court correctly paralleled *Spradlin*'s requirements. The instructions as a whole informed the jury of the proper mens rea needed to support a conviction for attempted murder.

[19] Furthermore, although Raggs challenges the sufficiency of the evidence of his mens rea on appeal, he did not do so at trial. Instead, his defense focused solely upon identity and whether he was even the shooter. Thus, the intent of the perpetrator was not a central issue at trial. Finally, during closing argument, rather than relying on the erroneous instructional language, the prosecutor instead made it clear to the jury that it had to find Raggs specifically intended to

kill Dorothy, that a "knowing" mens rea was insufficient, and thoroughly explained to the jury the difference between "knowing" and "intentional" conduct. Given the circumstances here, we cannot say that the erroneous reference to a "knowing" mens rea in two of the jury instructions, taken from the language of the charging information, amounted to fundamental error.

## Conclusion

[20] There is sufficient evidence to support Raggs's convictions for both murder and attempted murder, and the reference to a "knowing" mens rea in two of the jury instructions related to attempted murder did not amount to fundamental error. We affirm.

[21] Affirmed.

[22] Vaidik, C.J., and Mathias, J., concur.