## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 30 2020, 10:01 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Philip R. Skodinski
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Myriam Serrano
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Juan C. Rojas,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 30, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2348<br><br>Appeal from the St. Joseph<br>Superior Court<br><br>The Honorable Elizabeth C.<br>Hurley, Judge<br><br>Trial Court Cause No.<br>71D08-1902-F1-9 |

**Tavitas, Judge.**

## Case Summary

Juan Rojas appeals his conviction for attempted murder, a Level 1 felony. We affirm.

## Issue

Rojas raises one issue for our review, which we restate as whether the evidence is sufficient to support Rojas' conviction.

## Facts

On February 22, 2019, Jennifer Alvizo, Rojas' mother, and Jimmy Gamez, Alvizo's fiancée, lived together at Gamez's home in South Bend. On February 22, seventeen-year-old Rojas and his girlfriend, sixteen-year-old A.V., were at Gamez's home. Rojas asked Alvizo and Gamez whether Rojas and A.V. could stay at the home; however, Alvizo and Gamez declined to allow A.V. to stay because she had run away from home.

While Alvizo and Gamez were discussing the living arrangement, Rojas overheard the conversation from an adjacent room and confronted Gamez. Rojas was upset, angry, and aggressive when he confronted Gamez and told Gamez that Gamez should discuss his concerns with Rojas instead of Alvizo. Gamez and Rojas "buffed up"[1] to one another, and Gamez told Rojas that

---

[1] Alvizo testified that "buffed up" means Gamez and Rojas stood up to one another as if they were about to fight. Tr. Vol. II p. 21.

Rojas was "not about that," meaning Rojas was not ready to fight with Gamez because Rojas was a minor and Gamez was an adult. Tr. Vol. II p. 21.

[5] After the encounter, an angry Rojas left the room where Alvizo and Gamez were sitting. A.V. phoned Rojas' sister, Cassandra Alvizo ("Cassandra"), and requested a ride from the home. Rojas and A.V. packed clothes and, once Cassandra arrived, Rojas and A.V. went outside to Cassandra's vehicle. Rojas told Alvizo that, after placing his belongings in the vehicle, he would return to say goodbye to her. Rojas and A.V. put their belongings in Cassandra's vehicle, and A.V. and Cassandra left, leaving Rojas behind.

[6] Rojas returned to the front porch, stood at the door, and said: "Who ain't about that?" before shooting Gamez twice. *Id.* at 23. This comment Rojas made to Gamez was in reference to the earlier argument between the two where Gamez told Rojas that Rojas was too young to fight with Gamez. Gamez was sitting on the couch when Rojas approached the door. The distance between Gamez and Rojas was approximately ten to fifteen feet. The shots hit Gamez in his abdomen and in his leg. Alvizo called law enforcement.

[7] Rojas left the home and walked toward a different street, where A.V. and Cassandra, who left moments before, saw Rojas walking toward the vehicle. When Rojas got inside Cassandra's vehicle, Cassandra asked Rojas what was

going on, to which Rojas responded: "Don't trip."[2] *Id.* at 58. Rojas was acting "[n]ormal" when he got inside the vehicle. *Id.* at 75. Cassandra then dropped off A.V. and Rojas at the home of their friend, Charles Douglas.

[8] A few days later, on February 25, 2019, A.V. used her father's credit card to purchase pizza, and police were able to locate A.V. and Rojas at Douglas' home. Officers obtained a search warrant for Douglas' home and found a gun hidden behind a false wall in a closet.

[9] On February 25, 2019, the State charged Rojas with Count I, attempted murder, a Level 1 felony; and Count II, battery by means of a deadly weapon, a Level 5 felony. Rojas' jury trial was held on June 4 and 5, 2019. Witnesses testified to the foregoing facts.

[10] Detective Joshua Brooks, with the South Bend Police Department, testified that Gamez identified Rojas as the shooter. Officer Ronald Wilson, with the South Bend Police Department, testified that the weapon, located in Douglas' home, was a semi-automatic weapon and in order to fire two shots, Rojas was required to pull the trigger twice.

[11] At the trial, Rojas admitted that he fired the gun two times. Rojas testified, however, that his "intention wasn't to kill" Gamez. *Id.* at 152. Rojas said he "wasn't thinking" when he fired the shots. *Id.* at 158. Rojas did admit that he

---

[2] At trial, Cassandra testified that Rojas was telling Cassandra she should not "worry about it." Tr. Vol. II p. 58.

said: "Who ain't about that life?," *id.* at 176, before shooting at Gamez[3] and that the gun shown to the jury at the trial was the gun he used to shoot Gamez. In response to a juror question, Rojas stated that his intention was merely to scare Gamez.

[12] The jury found Rojas guilty of both counts. The trial court entered judgment on Count I only due to double jeopardy concerns and sentenced Rojas to the Department of Correction for thirty years with five years suspended to probation. Rojas now appeals his conviction.

## Analysis

[13] Rojas argues insufficient evidence was presented regarding Rojas' intent to kill to support his conviction for attempted murder. When there is a challenge to the sufficiency of the evidence, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State,* 51 N.E.3d 204, 210 (Ind. 2016) (citing *Bieghler v. State,* 481 N.E.2d 78, 84 (Ind. 1985), *cert. denied*), *cert. denied.* Instead, "we 'consider only that evidence most favorable to the judgment together with all reasonable inferences drawn therefrom.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84). "We will affirm the judgment if it is supported by 'substantial evidence of probative value even if there is some conflict in that evidence.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84); *see also McCallister v. State,* 91 N.E.3d 554, 558 (Ind. 2018) (holding that, even though there was conflicting evidence, it was "beside

---

[3] As discussed above, this comment was made in reference to an earlier fight between Rojas and Gamez.

the point" because that argument "misapprehend[s] our limited role as a reviewing court"). "We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Love v. State,* 73 N.E.3d 693, 696 (Ind. 2017) (citing *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007)).

[14]  Pursuant to Indiana Code Section 35-42-1-1(1), for a defendant to be convicted of murder, the State must prove that the defendant "knowingly or intentionally kill[ed] another human being." A defendant commits attempted murder if he or she engages in conduct "that constitutes a substantial step toward" murder. Ind. Code § 35-41-5-1(a).

> Attempt crimes generally require the same *mens rea* as completed crimes, but attempted murder is different in that it requires the State to prove "the defendant's *specific intent to kill*." *Rosales v. State*, 23 N.E.3d 8, 12 (Ind. 2015) (emphasis added). This requirement "stems from 'the stringent penalties for attempted murder and the ambiguity often involved in its proof.'" *Id.* (quoting *Hopkins v. State*, 759 N.E.2d 633, 637 (Ind. 2001)).

*Miller v. State*, 77 N.E.3d 1196, 1197 n.1 (Ind. 2017).

[15]  "An intent to kill sufficient to sustain a murder conviction can be established in several ways." *Burns v. State,* 59 N.E.3d 323, 328 (Ind. Ct. App. 2016), *trans. denied.* Specifically, intent to kill may be inferred from "the use of a deadly weapon," "the nature of the attack and the circumstances surrounding the crime," "[t]he duration and brutality of the attack[,] the relative strengths of the defendant and victim," and "where blows of magnitude are repeated, a jury

could conclude that the defendant had an intent to kill." *Id. See also Leon v. State,* 525 N.E.2d 331, 332 (Ind. 1988) ("Discharging a weapon in the direction of a victim is substantial evidence from which the jury could infer intent to kill.") (citations omitted).

[16] Here, jury had several facts from which it could infer Rojas' specific intent to kill Gamez. The State presented evidence that: (1) Gamez and Rojas got into an argument; (2) an angry Rojas began to leave the home with Cassandra and A.V., but remained behind after Cassandra and A.V. drove away and returned to the house to confront Gamez with a loaded weapon; (3) Rojas shouted: "Who ain't about that?" prior to shooting Gamez, which was a remark in response to Gamez's earlier argument with Rojas, demonstrating Rojas' continued anger with Gamez, tr. vol. II p. 23; (4) Rojas pulled the trigger twice, firing two shots at Gamez; (5) Rojas then returned to the vehicle with Cassandra and A.V. and was acting "normal," *id.* at 75; (6) Rojas went to Douglas' house immediately after the shooting; and (7) the weapon was hidden and police recovered the weapon behind a false wall in Douglas' home. From these facts, the jury could infer that Rojas firing the weapon two times toward Gamez, along with the surrounding circumstances, demonstrated Rojas' specific intent to kill Gamez.

[17] While Rojas testified that he did not have the intent to kill Gamez, the jury was free to disbelieve Rojas. Rojas' arguments are merely requests for us to reweigh the evidence, which we cannot do. *See Gibson,* 51 N.E.3d at 210. The evidence was sufficient for the jury to conclude that Rojas attempted to murder Gamez.

## Conclusion

[18] The evidence is sufficient to sustain Rojas' conviction for attempted murder, a Level 1 felony. We affirm.

[19] Affirmed.

Riley, J., and Mathias, J., concur.