Anthony HOPKINS, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 49–S00–0011–CR–617.

Supreme Court of Indiana.

Dec. 20, 2001.

---

Lesa Lux Johnson, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Adam Dulik, Deputy Attorney General, Indianapolis, for Appellee.

SULLIVAN, Justice.

Defendant Anthony Hopkins was convicted of two counts each of attempted murder, robbery, and confinement for his participation in a robbery and shooting. We reverse one attempted murder conviction because the jury was not adequately instructed on the requisite intent to kill needed to be guilty of that crime. In affirming all the other convictions, we find the evidence sufficient to support one of the attempted murder counts and no double jeopardy bar to the robbery and confinement convictions.

*Background*

The facts most favorable to the judgment indicated that in the early morning of March 9, 1999, the victims, George Martinez and Paula McCarty, were on their way to Martinez's home. They encountered Defendant and his brother, Edward, who were stranded on the roadside attempting to get a jump from another car. Martinez and Defendant had engaged in drug transactions in the past. Martinez and McCarty stopped the car and assisted Defendant and his brother. Defendant told Martinez that his car had been breaking down. Martinez told Defendant that if he had anything he did not want to get caught with, they could stop by his house and drop it off.

Soon after Martinez and McCarty returned home, Defendant and Edward showed up. Defendant asked Martinez to hold onto his gun for him. About fifteen minutes later, Defendant and Edward returned. When Martinez returned Defendant's gun, Defendant locked the door and then pointed the gun at Martinez and ordered Martinez and McCarty into the basement and told them to take their clothes off. McCarty resisted and Defendant hit her on the head with the gun. Once in the basement, Defendant took $4,500 from Martinez and $40 from McCarty. Defendant said that that was not enough, gave Edward the gun, and went upstairs to look for drugs and more money. Defendant found approximately two or three pounds of marijuana upstairs. Defendant yelled, "Where's it at?," as he searched the house.

While Defendant was still upstairs, Edward shot Martinez in the shoulder as Martinez and McCarty both pleaded for their lives. Edward was about three feet away and the bullet entered Martinez's shoulder, ricocheted into his neck, hit his carotid artery, and exited through his ear. Martinez lost consciousness. McCarty assumed that Martinez was dead, and testified that she thought Edward had blown the back of Martinez's head off. Martinez survived, but was in an intensive care unit for thirteen days as a result of being shot.

After Edward shot Martinez, Defendant returned to the basement and took the gun from Edward. Defendant then shot McCarty. As Defendant shot her, McCarty moved around so that he wouldn't hit her in the head. When she fell to the ground she pretended to be dead. Defendant and Edward went upstairs and left the house. Martinez regained consciousness and they were able to call for help. McCarty had been shot in the chest, and suffered a severed spinal cord, punctured lung, paralysis in her arm, and is now confined to a wheelchair.

Defendant was convicted of two counts of Attempted Murder,[1] two counts of robbery,[2] two counts of criminal confinement,[3] and one count of carrying a handgun with-

---

1. Ind.Code §§ 35–41–5–1 and 35–42–1–1 (1998).

2. Id. § 35–42–5–1.

3. Id. § 35–42–3–3.

out a license.[4] Defendant then pled guilty to being a habitual offender. The trial court sentenced Defendant to 50 years incarceration for Count I, the attempted murder of McCarty. The trial court also enhanced the sentence by 20 years under the habitual offender statute. The trial court sentenced Defendant to 50 years for count II, the attempted murder of Martinez; 20 years incarceration for counts III and IV, robbery; and three years incarceration each for the criminal confinement convictions. The trial court ordered all the terms to run consecutively for total executed time of 166 years.

## Discussion

### I

Defendant contends that there was insufficient evidence to convict him of the attempted murder of Martinez and that, in any event, the trial court committed fundamental error in erroneously instructing the jury regarding attempted murder and accomplice liability. (Appellant's Br. at 7.)

### A

As discussed under Background *supra,* Defendant was convicted of the attempted murder of Martinez. There is no dispute that Edward, not Defendant, shot Martinez while Defendant was upstairs searching for money in drugs. (Appellee's Br. at 8, n. 2) ("the State presented no evidence at [trial] that [Defendant] shot Martinez. Instead, all of the evidence presented at trial shows that Edward shot Martinez.").

▮▮▮▮ Because of the stringent penalties for attempted murder and the ambiguity often involved in its proof, this court has singled out attempted murder for special treatment. *See Richeson v. State,* 704 N.E.2d 1008 (Ind.1998). First, a conviction for attempted murder requires proof of specific intent to kill. *Spradlin v. State,* 569 N.E.2d 948, 950 (Ind.1991). And where, as here, the State seeks a conviction for attempted murder on an accomplice liability theory, we have held that its burden of proof is as follows:

(1) that the accomplice, acting with the specific intent to kill, took a substantial step toward the commission of murder, and

(2) that the defendant, acting with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused the accomplice to commit the crime of attempted murder.

*Bethel v. State,* 730 N.E.2d 1242, 1246 (Ind.2000).

### B

The trial court gave the following instructions on accomplice liability. Instruction 10: "You are instructed that when two or more persons combine to commit a crime, each is criminally responsible for the acts of his confederate(s) committed in furtherance of the common design, the act of one being the act of all." Instruction 11 read:

A person is responsible for the actions of another person when, either before or during the commission of a crime, he knowingly aids, induces, or causes the other person to commit a crime. To aid is to knowingly support, help, or assist in the commission of a crime.

In order to be held responsible for the action of another, he need only have knowledge that he is helping in the commission of a crime. He does not have to personally participate in the commission of each element of a crime.

Proof of the Defendant's failure to oppose the commission of a crime, presence at the crime scene, companionship

---

4. Id. § 35–47–2–1.

with the person committing the offense, and conduct before and after the offense may be considered in determining whether aiding may be inferred. (R. at 132.)

## C

■ Here, the trial court failed to instruct the jury regarding specific intent required of Defendant to establish accomplice liability for attempted murder. However, Defendant did not object and did not tender a correct instruction. He therefore waived his right to appeal this issue. *See Brown v. State*, 691 N.E.2d 438, 444 (Ind. 1998). In such circumstances, we will only reverse the trial court if the trial court committed error that was fundamental. *Id.* Fundamental error is a substantial, blatant violation of due process. *See Taylor v. State*, 717 N.E.2d 90, 93 (Ind.1999); *Brown*, 691 N.E.2d at 444. It must be so prejudicial to the rights of a defendant as to make a fair trial impossible. *See Brown*, 691 N.E.2d at 444; *Barany v. State*, 658 N.E.2d 60, 64 (Ind.1995).

In the past, we have found fundamental error in instructing juries on the intent required to convict of attempted murder. *See Bethel v. State*, 730 N.E.2d 1242, 1245 (Ind.2000); *Williams v. State*, 737 N.E.2d 734, 740 (Ind.2000). In other cases, we have found error that did not rise to the level of fundamental error. *See Ramsey v. State*, 723 N.E.2d 869, 872–73 (Ind.2000); *Swallows v. State*, 674 N.E.2d 1317, 1318 (Ind.1996); *Jackson v. State*, 575 N.E.2d 617, 621 (Ind.1991). One particular circumstance where we have found a *Spradlin* error not to constitute fundamental error is where the Defendant's intent was not at issue. In *Swallows*, for example, we found that the trial court had not committed fundamental error because the defense relied on identity, and "The intent of the Defendant was not in issue." *See Swallows*, 674 N.E.2d at 1318.

■ Here, we find that the trial court clearly erred by failing to instruct the jury on the specific intent necessary to establish accomplice liability for attempted murder. Final instructions 10 and 11 informed the jury of the state of mind that generally is required to convict a defendant of a crime based on accomplice liability. But these instructions did not inform the jury that in order to convict, it was required to find that Defendant intended to kill Martinez when he took the steps that helped Edward to kill him.

Adding to the strength of Defendant's claim is the fact that his intent to kill Martinez was clearly at issue. The Attorney General makes a very strong argument that Defendant possessed the requisite intent. He points out that Defendant and Edward seemed to have operated according to an agreed upon plan. McCarty testified that when Defendant returned to the basement, he did not seem mad at Edward for shooting Martinez. Indeed, when Defendant took the gun from Edward and pointed it at McCarty, he grinned at her as he pulled the trigger.

■ We agree with the State that it presented sufficient evidence at trial from which a jury could conclude that Defendant was guilty of attempted murder Defendant participated in ordering both victims to the basement, ordering them to strip, and taking their cash. He handed his brother a handgun while he went upstairs to ransack the house for drugs and/or money. His brother then, without any new conduct or provocation from either victim, simply pointed the handgun at Martinez's head and shot him. When Defendant returned to the basement, where Martinez was lying on the floor apparently dead, his brother handed him back the handgun, and Defendant proceeded without saying anything, and without any new

conduct or provocation from McCarty, to fire the handgun at her face from three feet away. These circumstances are sufficient to permit a jury to infer beyond a reasonable doubt that Defendant intended that his brother kill Martinez, and aided him in the crime.

But because Defendant's intent to kill Martinez was squarely at issue and because the jury was not properly instructed that it was required to find beyond a reasonable doubt that Defendant possessed the specific intent to kill Martinez, we are unable to affirm the trial court's judgment on this count. We conclude that, at minimum, the probable impact on the jury on every material element of the crime of the trial court's failure to instruct was not sufficiently minor as not to adversely affect Defendant's substantial rights. *See* Ind. Trial Rule 61; *Fleener v. State*, 656 N.E.2d 1140, 1141–42 (Ind.1995).

## II

Defendant contends that certain of his convictions violate Indiana's prohibition against double jeopardy.[5] Defendant argues that he was improperly convicted of both robbery and confinement. He also argues that his convictions for robbery as Class A felonies also violate double jeopardy.

### A

Defendant contends that his convictions for robbery and confinement violated double jeopardy law. He argues that the confinement was part of the robbery and therefore the trial court simultaneously charged him for an offense and a lesser-included offense.

■ "Indiana's Double Jeopardy Clause ... prevent[s] the State from being able to proceed against a person twice for the same criminal transgression." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind.1999). Indiana Code § 35–38–1–6 reinforces this rule, forbidding a trial court from sentencing a defendant for an offense and a lesser-included offense charged in separate counts. The code directs that "judgment and sentence may not be entered against the defendant for the included offense." *Id.*

■ Here, defendant's convictions for confinement and his convictions for robbery were separate acts. Robbery consists of taking property "by using or threatening the use of force" or "by putting any person in fear." *See* Ind.Code § 35–42–5–1 (1998). Criminal confinement consists of confining a person or removing them by fraud, enticement, force, or threat of force from one place to another. *See* Ind.Code § 35–42–3–3 (1998).

■ Confinement is not a lesser-included offense of robbery. Furthermore, where the confinement of a victim is greater than that which is inherently necessary to rob them, the confinement, while part of the robbery, is also a separate criminal transgression.[6] *See Harris v. State*, 716 N.E.2d 406, 412 (Ind.1999) (citing *Brown v. State*, 671 N.E.2d 401, 410

---

**5.** Defendant also contends that his consecutive sentences violate Indiana's consecutive sentencing statute. (Appellant's Br. at 18.) This contention is moot given our treatment of the issues discussed in part I *supra* and part II–A *infra*.

**6.** Defendant cites *Harvey v. State*, 719 N.E.2d 406, 411 (Ind.Ct.App.1999), in which the Court of Appeals overturned a confinement

conviction because "the force which supported the conviction for robbery was the same force which created the confinement." In *Harvey*, however, the Court of Appeals also stated that a separate conviction for confinement would stand where "there is force used beyond that which is inherently necessary." *Id.*

(Ind.1996)). Here, Defendant's confinement of his victims extended well beyond what was necessary to rob them; Defendant and Edward forced his victims to the basement at gunpoint. Defendant took $4,500 from Martinez and $40 from McCarty and then went upstairs to search the house. It was not necessary to force the victims into the basement to rob them. After initially taking the money, it was not necessary to force them to stay in the basement as Defendant searched the house. Both Defendant's removal of Martinez and McCarty to the basement and the confinement after robbing them were separate criminal transgressions from the robberies themselves.

■ To succeed in his claim of double jeopardy under the *Richardson* actual evidence test, the defendant must demonstrate a reasonable possibility that the jury used the same evidentiary facts to establish the essential elements of both robbery and confinement. *See Richardson,* 717 N.E.2d at 53. Obviously, the evidence used to establish the confinement could not have also proved robbery because it would not have proven the taking element. More difficult is whether the evidence proving the essential elements of robbery (knowingly; took property; by fear or threatened use of force) may have been used also to establish the essential elements of criminal confinement (knowingly; confine; without consent).

■ Under the instruction and the evidence presented, the jury theoretically could have found that the offense of criminal confinement was committed either (1) when Martinez and McCarty were forced at gunpoint to go from the kitchen to the basement, (2) when they were forced at gunpoint to remove their clothes, (3) when they were forced at gunpoint to hand over money, or (4) when they were thereafter confined in the basement while the house was being searched. It is only the third of these three events (where the same evidentiary facts establish both robbery and criminal confinement) that implicates the *Richardson* actual evidence test.

■ However, double jeopardy under this test will be found only when it is *reasonably* possible that the jury used the same evidence to establish two offenses, not when that possibility is speculative or remote. *See Griffin v. State,* 717 N.E.2d 73, 89 (Ind.1999). This Court has determined the possibility to be remote and speculative and therefore not reasonable when finding no sufficiently substantial likelihood that the jury used the same evidentiary facts to establish the essential elements of two offenses. *See Long v. State,* 743 N.E.2d 253, 261 (Ind.2001); *Redman. v. State,* 743 N.E.2d 263, 268 (Ind.2001).

Considering the protracted nature of the criminal episode, and particularly the completed offense of criminal confinement as to each victim when they were initially ordered at gunpoint into the basement, we find no sufficient substantial likelihood that the jury based its determination of guilt on the confinement counts upon the evidence of the incidental confinement at the moment of the robbery.

B

Defendant argues that his convictions for robbery should be entered as Class C felonies.

Both Defendant and the State argue this issue on the assumption that he was convicted of robbery as a Class A felony. Defendant was charged and convicted of two counts of robbery as Class A felonies and the abstract of judgment shows the judgment was entered on that basis. However, our reading of the record indicates that the trial judge meant to enter

judgment on these counts as Class B felonies. We draw this conclusion from the judge's colloquy with the prosecuting attorney at sentencing, and the fact that the sentence imposed on these two counts—20 years—is the maximum sentence authorized for Class B felonies, Ind.Code § 35–50–2–5. (While we acknowledge that 20 years is also the minimum authorized sentence for a Class A felony, we find nothing in the record to support a conclusion that the judge intended to impose the minimum sentence available on any count.)

 We hold that Defendant stands convicted of two counts of robbery as Class B felonies for which the maximum authorized sentence of 20 years has been properly imposed.[7]

 The apparent reason the trial court sentenced Defendant on robbery as Class B felonies is because Defendant's robbery convictions could not be elevated by the same serious bodily injuries that were the basis of the attempted murder convictions. *See Chapman v. State,* 719 N.E.2d 1232, 1234 (Ind.1999). Here (as in *Chapman*) the State's robbery charges against Defendant alleged his use of a handgun, the element that permits elevation of robbery to a Class B felony. As such, Defendant is not entitled to have the convictions reduced to Class C felonies.

### Conclusion

We affirm Defendant's convictions for the attempted murder of McCarty and on both counts of criminal confinement. We reverse Defendant's conviction for the attempted murder of Martinez.

7. The abstract of judgment also reflects that the convictions for criminal confinement were entered as Class B felonies. Our reading of the record, however, indicates that the trial court meant to enter judgment on those

We remand to the trial court with the following instructions. First, the 50–year sentence for the attempted murder of McCarty may be enhanced by the 20–year habitual offender enhancement. Second, the abstract of judgment should be corrected to show that judgment has been entered on the two convictions for robbery as Class B felonies. Third, the abstract of judgment should also be corrected to show that judgment has been entered on the two convictions for criminal confinement as Class D felonies.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.

counts as Class D felonies. We hold that Defendant stands convicted of two counts of criminal confinement as Class D felonies for which the maximum authorized sentence of three years has been properly imposed.