**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 14 2012, 8:53 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DARREN BEDWELL**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

STACEY JOHNSON,                    )
                                   )
    Appellant-Defendant,           )
                                   )
        vs.                 )    No. 49A02-1201-CR-46
                                   )
STATE OF INDIANA,                  )
                                   )
    Appellee-Plaintiff.            )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila A. Carlisle, Judge
Cause No. 49G03-1106-FA-46242

**August 14, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Stacey Johnson appeals his convictions for robbery as a class A felony[1] and criminal confinement as a class D felony.[2] Johnson raises one issue which we revise and restate as whether Johnson's convictions violate the prohibition against double jeopardy. We affirm.

The relevant facts follow. In November 2010, Charles Krutz was retired and had known Johnson for three or four months as Johnson and a person Krutz knew as Neff used to "hang out" around Krutz's building. Transcript at 61. On November 28, 2010, Johnson and Neff stopped by Krutz's residence between 10:00 and 12:00 p.m., and Neff asked Krutz to borrow his car for an hour or two. Neff and Johnson did not return the car that day, Krutz tried to call to check on his car, and nobody answered the phone until Johnson finally answered the phone and said: "We'll be back in about an hour." Id. at 63.

Krutz was watching television and waiting and "kind of falling asleep," when, at 4:00 a.m., Krutz heard a knock on his door, looked out the peephole, saw Johnson, opened the door, and saw that Johnson was accompanied by someone wearing a Halloween mask. Id. Johnson grabbed Krutz and threw him on the floor. Johnson then wrapped duct tape around Krutz's hands and legs. Krutz also eventually had "something over [his] face and something in [his] mouth," and Johnson "wrapped tape around that." Id. at 65. Johnson dragged Krutz from the front room, through the dining room, and into the kitchen. At that point, Johnson tied Krutz up with an extension cord. Johnson then poured a liquid on Krutz. Krutz did not know what the liquid was and thought: "Oh, shit.

---

[1] Ind. Code § 35-42-5-1 (2004).

[2] Ind. Code § 35-42-3-3 (Supp. 2006).

Now they're going to set me on fire." Id. at 67. Krutz "was laying there waiting to, you know – for what was going to happen next, whether [he] was going to burst into flames or whatever." Id. Krutz did not hear any movement and was eventually able to free himself after "45 minutes, an hour, something like that." Id. at 68. Krutz was "really short of breath" and realized that the liquid Johnson poured on him was bleach because the color was gone from his pajamas. Id. Krutz's television and cell phone were missing from his residence. Krutz changed clothes and called the police from his neighbor's residence.

Indianapolis Metropolitan Police Officer Tracy Ryan responded to the call and found Krutz outside of the residence when she arrived. Krutz was "very scared" and shaking. Id. at 41. Krutz was having difficulty talking and was wheezing and coughing. Officer Ryan smelled the very strong odor of bleach and had to exit Krutz's residence due to the overpowering odor of the bleach. An ambulance transported Krutz to the hospital. Krutz "hurt all over" and suffered chemical pneumonia and rug burns and remained in the hospital for two and one-half days. Id. at 74. Krutz also had more difficulty breathing after the encounter.

On June 28, 2011, the State charged Johnson with Count I, burglary as a class A felony; Count II, robbery as a class A felony; Count III, criminal confinement as a class B felony; Count IV, battery as a class C felony; Count V, auto theft as a class D felony; and Count VI, interference with reporting a crime as a class A misdemeanor. On December 9, 2011, the State dismissed Count I and Count VI.

A jury found Johnson guilty of Count II, robbery as a class A felony; Count III, criminal confinement as a class B felony; and Count IV, battery as a class C felony. The jury found Johnson not guilty of Count V, auto theft as a class D felony. The court vacated the conviction under Count IV, battery as a class C felony due to double jeopardy concerns with Count II, robbery as a class A felony. The court also reduced the conviction under Count III, criminal confinement, to a class D felony. The court sentenced Johnson to forty years for robbery as a class A felony with thirty-eight years to be served at the Department of Correction followed by two years of work release and two years for criminal confinement as a class D felony. The court ordered that the sentences be served concurrent with each other.

The issue is whether Johnson's convictions violate the prohibition against double jeopardy. The Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." IND. CONST. art. 1, § 14. The Indiana Supreme Court has held that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." Richardson v. State, 717 N.E.2d 32, 49 (Ind. 1999).

Johnson argues that his convictions violate Indiana's prohibition against double jeopardy based upon the actual evidence test. Johnson argues that based on the charging information, the arguments of counsel, and the evidence presented at trial, there is more than a reasonable possibility that the jury relied on the same actual evidence to convict

4

him of both criminal confinement and robbery. Specifically, Johnson argues that the evidence that he tied Krutz and forced him to lie on the floor to prove criminal confinement "is the very same as the evidence of force that the State emphasized in arguing the Robbery charge." Appellant's Brief at 9.

The State argues that Johnson confined Krutz beyond the confinement necessary to effectuate the robbery. The State also argues that Johnson committed the robbery by placing Krutz in fear and that "[e]ven without the force used against Krutz, Johnson placed Krutz in fear in order to rob Krutz." Appellee's Brief at 10. Thus, the State argues that "[b]ecause the State also proved that Johnson committed robbery by placing Krutz in fear, no double jeopardy violation occurred based on the use of force." Id.

In his reply brief, Johnson argues that he did not take additional steps to confine Krutz once he was tied up and his property taken. Johnson also argues that "although Krutz was tied up and left on the floor for several hours, there is no evidence that Johnson or his accomplice used additional force to confine him once the robbery was complete." Appellant's Reply Brief at 2.

Under the actual evidence test, the evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. Lee v. State, 892 N.E.2d 1231, 1234 (Ind. 2008). To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. Id. The Indiana Supreme Court has

5

determined the possibility to be remote and speculative and therefore not reasonable when finding no sufficiently substantial likelihood that the jury used the same evidentiary facts to establish the essential elements of two offenses. Hopkins v. State, 759 N.E.2d 633, 640 (Ind. 2001) (citing Long v. State, 743 N.E.2d 253, 261 (Ind. 2001), reh'g denied; Redman v. State, 743 N.E.2d 263, 268 (Ind. 2001)); Griffin v. State, 717 N.E.2d 73, 89 (Ind. 1999), cert. denied, 530 U.S. 1247, 120 S. Ct. 2697 (2000).

Application of the actual evidence test requires the court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the fact-finder's perspective. Lee, 892 N.E.2d at 1234. In determining the facts used by the fact-finder to establish the elements of each offense, it is appropriate to consider the charging information, jury instructions, and arguments of counsel. Lee, 892 N.E.2d at 1234; Spivey v. State, 761 N.E.2d 831, 832 (Ind. 2002).

"[U]nder the . . . actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." Spivey, 761 N.E.2d at 832-833. Generally, double jeopardy does not prohibit convictions of confinement and robbery when the facts indicate that the confinement was more extensive than that necessary to commit the robbery. Merriweather v. State, 778 N.E.2d 449, 454 (Ind. Ct. App. 2002) (citing Hopkins, 759 N.E.2d at 639; Thy Ho v. State, 725 N.E.2d 988, 993 (Ind. Ct. App. 2000)).

Robbery consists of taking property "by using or threatening the use of force on any person" or "by putting any person in fear." Ind. Code § 35-42-5-1 (2004). Criminal

6

confinement consists of confining a person or removing a person, by fraud, enticement, force, or threat of force, from one place to another. Ind. Code § 35-42-3-3 (Supp. 2006).

Initially, we observe that the information and instruction related to robbery did not limit an element of robbery to the act constituting criminal confinement. The charging information and instruction relating to criminal confinement alleged that Johnson tied Krutz's hands and feet and forced him to lie on the floor.[3] The charging information and jury instruction for robbery mentioned that Johnson placed Krutz in fear *or* used or threatened the use of force.[4] Further, the record reveals that Krutz testified that he

---

[3] The State's charging information for criminal confinement stated:

> STACEY M. JOHNSON, on or about NOVEMBER 28, 2010, did knowingly confine Charles Krutz, without the consent of Charles Krutz, by tying his hands and feet and forcing him to lie on the floor, which resulted in serious bodily injury, that is: rug burns, pneumonia and extreme pain, to Charles Krutz[.]

Appellant's Appendix at 55. Preliminary Instruction Number 7 addressed the criminal confinement charge and stated in part:

> Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt:
>
> 1. The Defendant, Stacey M. Johnson
> 2. Knowingly
> 3. Confined Charles Krutz without his consent, by tying his hands and feet and forcing him to lie on the floor.
> 4. And the confinement resulted in serious bodily injury that is: rug burns, pneumonia and extreme pain, to Charles Krutz.

Id. at 119.

[4] The State's charging information for robbery stated:

> STACEY M. JOHNSON, on or about NOVEMBER 28, 2010, did knowingly take from the person or presence of Charles Krutz property, that is: a television set, cell phone, and house and car keys, by putting Charles Krutz in fear or by using or threatening the use of force on Charles Krutz, which resulted in serious bodily injury, that is: severe rug burns, pneumonia and extreme pain, to Charles Krutz[.]

7

thought Johnson was going to set him on fire and that Officer Ryan described Krutz as "very scared" and shaking. Transcript at 41. See Redman, 743 N.E.2d at 268 (holding that there was no sufficiently substantial likelihood that the jury relied on the evidence of the abduction by removal to establish the overt act element of the conspiracy charge where the trial court's instructions clearly authorized any one of several bases for finding the overt act element); Lee, 892 N.E.2d at 1235-1236 (discussing Redman and observing that the Court had not found a double jeopardy violation when the fact supporting a first charge could theoretically have served as the overt act of a conspiracy charge, but the jury was instructed on additional facts supporting an overt act).

Next, we cannot say that the criminal confinement was coextensive with the robbery. The Indiana Supreme Court has stated that "where the confinement of a victim is greater than that which is inherently necessary to rob them, the confinement, while part of the robbery, is also a separate criminal transgression." Hopkins, 759 N.E.2d at 639. The evidence shows that independent crimes were committed. The record reveals that

---

Appellant's Appendix at 55. Preliminary Instruction Number 6 addressed the crime of robbery and stated in part:

> Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt:
>
> 1. The Defendant, Stacey M. Johnson
> 2. Knowingly
> 3. Took property, that is: a television set, cell phone, and house and car keys from the person or presence of Charles Krutz
> 4. By putting Charles Krutz in fear or by using or threatening the use of force on Charles Krutz
> 5. And the commission of elements 1 through 4 resulted in serious bodily injury to Charles Krutz, that is: severe rug burns, pneumonia and extreme pain to Charles Krutz.

Id. at 118.

8

Johnson grabbed Krutz, threw him on the floor, wrapped duct tape around Krutz's hands and legs, placed something over Krutz's face and something in his mouth, dragged Krutz through the dining room and into the kitchen, tied up Krutz with an extension cord and poured bleach on him. Krutz was not able to free himself until forty-five minutes to an hour later.

Based upon the record, we find no sufficient substantial likelihood, and thus cannot say that Johnson has demonstrated a reasonable possibility, that the trier of fact based its determination of guilt on the robbery count upon the evidence used to find Johnson guilty of criminal confinement. The confinement of Krutz went beyond that necessary to accomplish the robbery. Accordingly, the criminal confinement conviction does not violate Johnson's right against double jeopardy. See Merriweather, 778 N.E.2d at 455-456 (holding that there was no reasonable possibility that the court used the same evidentiary facts to convict the defendant of robbery and criminal confinement where the defendant grabbed a victim's arm and ordered her to empty the cash register drawers, continued to hold her at gunpoint, ordered her to go to the manager's office, and confined her at gunpoint for nearly fifteen minutes before fleeing).

For the foregoing reasons, we affirm Johnson's convictions for robbery as a class A felony and criminal confinement as a class D felony.

Affirmed.

FRIEDLANDER, J., and DARDEN, Sr. J., concur.