## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 29 2016, 6:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeremy K. Nix
Matheny, Hahn, Denman & Nix, L.L.P.
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Racheal Dawn Ruble,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

March 29, 2016

Court of Appeals Case No.
35A02-1507-CR-932

Appeal from the Huntington
Circuit Court

The Honorable Thomas M.
Hakes, Judge

Trial Court Cause No.
35C01-1411-F3-260

**Brown, Judge.**

[1] Racheal Dawn Ruble appeals her conviction for neglect of a dependent resulting in serious bodily injury as a level 3 felony and raises two issues. We find dispositive the issue of whether her conviction for neglect of a dependent must be reduced from a level 3 felony to a level 6 felony. We reverse and remand for resentencing.

## Facts and Procedural History

[2] On September 9, 2014, Ruble took K.R., who was the grandson of her husband Gary and just shy of four months old at the time, to a walk-in clinic in Huntington, Indiana, and reported that she believed something was wrong with K.R.'s ankle and that her dog had stepped on K.R.'s right foot. Marcy Pratt, a nurse practitioner, examined K.R. and noted that he appeared to be normal other than that he was bloated and irritable and, with respect to his leg, that it looked normal, there was no swelling, no bruising, no scratches, and nothing that indicated there had been any injury to the leg or ankle whatsoever. Pratt also examined K.R.'s head and noted that, other than a small bruise on his right cheek, his head appeared normal.

[3] At approximately 7:00 p.m. on September 11, 2014, Ruble returned to the clinic with K.R., and Pratt immediately recognized that K.R.'s upper right leg was very swollen, that it was twice the size of his left leg and the skin was tight, and that, if you touched it, he would scream in pain. Pratt believed there was a fracture to K.R.'s femur and was adamant with Ruble that K.R. needed to go to the emergency room immediately. Pratt also noted that K.R.'s head appeared

normal. Ruble made every indication that she was headed to the emergency room.

[4] Approximately one to one and one-half hours after Ruble and K.R. left the clinic, Pratt checked with the emergency room and learned that K.R. had not arrived. Pratt eventually spoke with the emergency room physician, Dr. Sheila Blakley, and then called child protective services. Huntington Police Officer Shane Blair went to Ruble's home close to 10:00 p.m., and Ruble informed him that K.R. was not there but was with Gary. Officer Blair asked Ruble why she had not taken K.R. to the hospital, and Ruble stated that she was waiting for Gary to leave work and they could go together. Officer Blair advised Ruble that she needed to meet her husband and take K.R. to the hospital. At some point, Gary returned home from work and found K.R. at home and saw that K.R.'s leg was swollen to twice the size it should be, and he and Ruble took K.R. to the hospital. They arrived at the hospital "closer to 11:00 o'clock." Transcript at 181.

[5] At the emergency room, Dr. Blakley examined K.R. and found significant swelling to his right thigh along with signs of a head injury. The swelling of K.R.'s leg indicated a possible underlying facture, and the swelling of his interior fontanel indicated there was increased pressure around the brain. A C.T. scan of his head showed multiple areas of bleeding within and around his brain. Dr. Blakley noticed that the bleeding appeared to be acute and had occurred recently. Dr. Blakley also noted that the fact that K.R.'s fontanel was flat at the clinic but swollen at the time he was admitted to the hospital

indicates increasing pressure and continued bleeding, and would support a finding of a more acute injury. An x-ray showed a spiral-type fracture in the middle of K.R.'s femur. Dr. Blakley also observed hemorrhaging behind or within K.R.'s eye, which is consistent with acceleration and deceleration or rapid and vigorous shaking. Dr. Blakley believed that, if left untreated, K.R.'s injuries could have been life threatening, and K.R. was transported to Riley Children's Hospital.

[6] Dr. Katherine Haider, a pediatric ophthalmologist, examined K.R. and observed a pattern of retinal hemorrhages over his left eye which was consistent with a child who had non-accidental trauma. Dr. Ralph Hicks, a child abuse pediatrics specialist, examined K.R. in the morning on September 12, 2014, and prepared reports. Dr. Hicks noted that K.R. had a spiral fracture to his right femur, and the x-ray showed no evidence of healing so the fracture was recent. Dr. Hicks further noted that M.R.I. images showed indications of collections of blood around the brain and that the neuroradiologist felt that the collections were probably of different ages, suggesting there had been more than one event involving some sort of head injury.

[7] In their investigation, police determined that Cheyenne Hibbert, a developmental disability professional, had a home visit with K.R. and Ruble on September 3, 2014, and again on September 11, 2014, from 12:30 to 2:00 p.m., and she did not observe anything out of the ordinary or notice anything while watching K.R. that made her believe that he was in any kind of pain or distress. Also, Ruble's sister had cared for K.R. overnight from September 5 to

September 6, 2014, and K.R. appeared healthy at the time, and Ruble's probation officer met with Ruble on September 10, 2014, at which time K.R. did not appear to be in pain and slept the entire time.

[8] On November 20, 2014, the State charged Ruble with: Count I, battery on a child resulting in serious bodily injury, namely a broken femur, as a level 3 felony; Count II, battery on a child resulting in serious bodily injury, namely abusive head trauma, as a level 3 felony; Count III, neglect of a dependent resulting in serious bodily injury as a level 3 felony; Count IV, battery on a child resulting in bodily injury of a subdural hematoma as a level 5 felony; and Count V, battery on a child resulting in bodily injury of a broken tibia as a level 5 felony. The State later moved to dismiss Count V, and the court granted the motion. Following a jury trial in May 2015, the jury found Ruble guilty as charged on Counts I, II, and III and not guilty on Count IV, and the court entered judgment of conviction on Counts I, II, and III. As to each of her convictions under Counts I through III, the court sentenced Ruble to thirteen years with four years suspended to probation, and ordered that Counts I and II be served concurrently with each other and consecutive to Count III, for an aggregate sentence of twenty-six years with eighteen years executed and eight years suspended to probation.

*Discussion*

The issue is whether Ruble's conviction of neglect of a dependent as a level 3 felony violates double jeopardy principles.[1] The Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." IND. CONST. art. 1, § 14. "Indiana's Double Jeopardy Clause . . . prevent[s] the State from being able to proceed against a person twice for the same criminal transgression." *Hopkins v. State*, 759 N.E.2d 633, 639 (Ind. 2001) (quoting *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999)). The Indiana Supreme Court has held that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson*, 717 N.E.2d at 49.

In addition, Indiana courts "have long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson*." *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002) (quoting *Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002) (citing *Richardson*, 717 N.E.2d at 55 (Sullivan, J., concurring))). "Even where no constitutional violation has occurred, multiple

---

[1] To the extent the State argues that Ruble's two convictions for battery as level 3 felonies under Counts I and II are based on separate injuries that occurred at separate times and thus do not violate the prohibition against double jeopardy, we note that Ruble does not challenge her battery convictions but rather challenges the enhancement of her conviction for neglect of a dependent under Count III to a level 3 felony.

convictions may nevertheless violate the 'rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson*.'" *Vandergriff v. State*, 812 N.E.2d 1084, 1088 (Ind. Ct. App. 2004) (quoting *Pierce*, 761 N.E.2d at 830), *trans. denied*. As enumerated in Justice Sullivan's concurrence in *Richardson* and endorsed by the Indiana Supreme Court in *Guyton*, five additional categories of double jeopardy exist: (1) conviction and punishment for a crime which is a lesser-included offense of another crime for which the defendant has been convicted and punished; (2) conviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished; (3) conviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished; (4) conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished; and (5) conviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished. *See Guyton*, 771 N.E.2d at 1143; *Richardson*, 717 N.E.2d at 55-56 (Sullivan, J., concurring).

[11]  Ruble maintains that her convictions for battery on a child resulting in serious bodily injury as level 3 felonies and neglect of a dependent resulting in serious bodily injury as a level 3 felony violate Indiana's double jeopardy jurisprudence.

After noting that the statutes governing the offenses of battery and neglect of a dependent provide for an enhancement to a level 3 felony if the offenses result in serious bodily injury, Ruble argues that the information charging her with neglect of a dependent "did not specify the serious bodily injury that was caused by the neglect as opposed to the batteries" and that the State did not elicit any testimony or argue in closing argument that "any additional injury [was] caused by [her] delay in seeking medical attention for K.R." Appellant's Brief at 8-9. In support of her argument, Ruble cites to *Strong v. State*, 870 N.E.2d 442 (Ind. 2007), and *Montgomery v. State*, 21 N.E.3d 846 (Ind. Ct. App. 2014), *trans. denied*. She requests that her conviction for neglect of a dependent be reduced from a level 3 felony to a level 6 felony to remedy the double jeopardy violation.

[12] The State responds that, although the offense under Count III was elevated to a level 3 felony on the basis that serious bodily injury occurred, the battery counts were elevated to level 3 felonies for that reason and because of the ages of the victim and perpetrator. The State also argues that all three counts were based on separate harms. With respect to Count III, the State notes that the count "did not allege a specific serious bodily injury but was based on [Ruble] not taking K.R. to the emergency room after it was obvious that he had a serious problem with his leg" and that "[t]he neglect charge in Count III was not based on any inflicted injury" but was based on the fact Ruble failed to obtain immediate medical care "after it was obvious that he had a substantial leg problem . . . ." Appellee's Brief at 18, 20. The State argues that, if there is a

double jeopardy problem, the solution is to reduce the conviction under Count III from a level 3 felony to a level 6 felony and to remand to the trial court for appropriate resentencing.

[13] Ind. Code § 35-42-2-1 governs the offense of battery and provides in part that a person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery as a class B misdemeanor. The statute further provides that the offense is a level 6 felony "if one (1) or more of the following apply: . . . (1) The offense results in moderate bodily injury to any other person" or "(3) The offense is committed against a person less than fourteen (14) years of age and is committed by a person at least eighteen (18) years of age." Ind. Code § 35-42-2-1(d). Finally, the statute provides the offense is a level 3 felony "if it results in serious bodily injury to a person less than fourteen (14) years of age if the offense is committed by a person at least eighteen (18) years of age." Ind. Code § 35-42-2-1(i).

[14] Ind. Code § 35-46-1-4 governs the offense of neglect of a dependent and provides in part that a person having the care of a dependent, who knowingly or intentionally places the dependent in a situation that endangers the dependent's life or health, commits neglect of a dependent as a level 6 felony. The statute further provides in part that the offense above is a level 5 felony if it "results in bodily injury" and a level 3 felony if it "results in serious bodily injury." Ind. Code § 35-46-1-4(b)(1), (b)(2). "Serious bodily injury" means in part "bodily injury that creates a substantial risk of death or that causes . . . serious permanent disfigurement, [] unconsciousness, [] extreme pain, [or] permanent

or protracted loss or impairment of the function of a bodily member or organ . . . ." Ind. Code § 35-31.5-2-292.

[15]  In *Strong*, Chad Strong was convicted of the murder of his girlfriend's three-year-old daughter, Taranova Glick, and neglect of a dependent resulting in the same child's death as a class A felony. 870 N.E.2d at 442. The Court noted that the murder count charged Strong with knowingly killing Taranova, and the neglect of a dependent resulting in death count "alleged that [Strong], who had care of three-year-old Taranova Glick as a dependent, knowingly placed her 'in a situation endangering her life or health,' allowing her 'to languish and suffer without medical treatment knowing she had been gravely injured, all of which resulted in the death of Taranova Glick.'" *Id.* at 443. The Court observed the relevant statute, Ind. Code § 35-46-1-4, and noted that "[t]he offense of neglect of a dependent, absent a resulting injury, [was] defined as a class D felony," and that the crime was a class C felony when it "results in bodily injury," a class B felony when it "results in serious bodily injury," and a class A felony when it "results in the death of a dependent who is less than fourteen (14) years of age." *Id.* The Court then noted that the State argued that the murder and neglect convictions were based on two different sets of actions as the murder happened when Strong "placed his knee into Taranova's abdomen" and the "neglect happened thereafter when he did not seek medical attention." *Id.* The Court held that "[s]uch a recharacterization of the charges, however, does not eliminate the fact that both charged offenses would still be based on the same bodily injury." *Id.* at 444. The Court further held that "[t]he injuries urged to

support the 'serious bodily injury' necessary for class B neglect are the same injuries, the same harm, that resulted in the child's death and are the basis of the murder charge" and that "[o]nly when deemed a class D offense, *which does not include any element of bodily injury*, does the conviction of neglect of a dependent satisfy the common law/statutory construction aspect of Indiana's double jeopardy jurisprudence." *Id.* (emphasis added). The Court remanded to the trial court "to reduce the conviction for neglect of a dependent from a class A felony to a class D felony, for which the sentence shall be a term of three years, to be served consecutively to the sentence for murder." *Id.*

[16]     In *Montgomery*, the State charged Christopher Montgomery with, among other counts, murder and two counts of neglect of a dependent as class A felonies, and the jury found him guilty as charged. 21 N.E.3d at 851. The trial court entered judgments of conviction on the murder count and the two neglect of a dependent counts, including under count III for failing to seek immediate medical help after Elijah sustained a head injury. *Id.* The trial court reduced the conviction under count III to a class B felony based upon double jeopardy concerns. *Id.* In addressing whether Montgomery's conviction of neglect of a dependent as a class B felony violated double jeopardy principles, this Court held that the Indiana Supreme Court's reasoning in *Strong* applied with equal force to Montgomery's neglect of a dependent conviction. *Id.* at 865-867. We noted that Montgomery had been found guilty of neglect of a dependent as a class A felony for causing the death of Elijah and that the court had entered the conviction as a class B felony for failing to seek immediate medical help after

Elijah sustained the head injury. *Id.* at 867. We further noted that, "[h]owever, that serious bodily injury was the same injury which led to Elijah's death" and that thus the trial court "should have entered Montgomery's conviction" on count III "as a class D felony, which applies to the crime of neglect of a dependent without any element of bodily injury." *Id.* We accordingly remanded with instructions to reduce Montgomery's conviction under count III from a class B felony to a class D felony and to enter a sentence of three years to be served consecutive to his murder sentence. *Id.*

[17]     In this case, the charging information alleged under Count I that Ruble committed battery on K.R. "which resulted in serious bodily injury, to wit: <u>a broken femur</u>," under Count II that she committed battery on K.R. "which resulted in serious bodily injury, to wit: <u>Abusive Head Trauma</u>," and under Count III that she committed neglect of a dependent by placing the dependent in a situation that "endangered the life or health of K.R., a four month old male child, said act resulting in serious bodily injury." Appellant's Appendix at 12-16. The State acknowledges that Count III does not identify a specific "serious bodily injury" in addition to the serious bodily injuries alleged in Counts I and II or otherwise. Further, the prosecutor in closing arguments pointed to K.R.'s broken femur and head trauma as the injuries supporting the enhancements to level 3 felonies of the battery charges under Counts I and II, but did not point to a specific alleged serious bodily injury or harm to support the enhancement to a level 3 felony of the neglect of a dependent charge under Count III.

[18]     The State's position, which appears to have support in the record, is that the neglect charge under Count III was based on Ruble failing to obtain medical care for K.R. after it was obvious he "had a *substantial leg problem*" and that "the neglect charge was based on [Ruble] not immediately obtaining medical treatment *for K.R.'s leg* after Pratt told her to immediately take the baby to the emergency room." Appellee's Brief at 20 (emphases added). This is consistent with the testimony presented at trial, which established that, when Pratt examined K.R. at approximately 7:00 p.m. on September 11, 2014, she observed that K.R.'s right leg had become badly swollen and K.R. was in pain, she believed the leg was fractured, and she instructed Ruble to take K.R. to the emergency room immediately. However, the serious bodily injury to K.R.'s leg was the same injury, the same harm, which supports Ruble's conviction for battery as a level 3 felony under Count I. *See Strong*, 870 N.E.2d at 443-444 (the same abdomen injury supported the defendant's two convictions); *Montgomery*, 21 N.E.3d at 867 (the same head injury supported the defendant's two convictions). The State does not point to evidence that Ruble's failure to seek immediate treatment for K.R.'s leg resulted in additional serious bodily injury or harm. We conclude that Ruble's conviction for neglect of a dependent under Count III must be reduced to a level 6 felony, which in this case does not include an element of bodily injury. *See Strong*, 870 N.E.2d at 444 ("Only when deemed a class D offense, *which does not include any element of bodily injury*, does the conviction of neglect of a dependent satisfy the common law/statutory construction aspect of Indiana's double jeopardy jurisprudence . . . .") (emphasis added); *Montgomery*, 21 N.E.3d at 867 (holding that defendant's

conviction for neglect of a dependent should have been entered as a class D felony which applies to the crime without any element of bodily injury). We remand with instructions to reduce Ruble's conviction for neglect of a dependent under Count III from a level 3 felony to a level 6 felony and to resentence Ruble accordingly.[2]

## *Conclusion*

[19] For the foregoing reasons, we reverse and remand with instructions to reduce Ruble's conviction for neglect of a dependent under Count III from a level 3 felony to a level 6 felony and to resentence Ruble accordingly.

[20] Reversed and remanded.

Kirsch, J., and Mathias, J., concur.

---

[2] As we remand with instructions to reduce Ruble's conviction under Count III to a level 6 felony and for resentencing, we need not address Ruble's argument that her crimes were part of an episode of criminal conduct and thus that the aggregate sentence imposed exceeded the limitation provided by Ind. Code § 35-50-1-2.