## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 02 2018, 6:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Daurrell L. Figgs
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Daurrell L. Figgs, <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent* | July 2, 2018 <br><br> Court of Appeals Case No. <br> 02A05-1711-PC-2839 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable John F. Surbeck, Jr., Judge <br><br> Trial Court Cause No. <br> 02D05-1702-PC-25 |

**Altice, Judge.**

**Case Summary**

[1] Daurrell L. Figgs, by counsel, filed a petition for post-conviction relief alleging that trial and appellate counsel were ineffective for failing to raise a double jeopardy challenge to his convictions for robbery and aggravated battery. The post-conviction court denied Figgs's petition, concluding that Figgs was not subjected to double jeopardy and, thus, did not receive ineffective assistance of trial or appellate counsel. Figgs, now pro se, appeals from the denial of the petition. He contends that his post-conviction counsel failed to submit argument and evidence in support of the petition, which deprived him of due process. Additionally, Figgs argues that the post-conviction court erred when it denied his claims of ineffective assistance of trial and appellate counsel.

[2] We affirm.

## Facts & Procedural History

[3] On September 15, 2010, a jury found Figgs guilty of aggravated battery (Count I) and two counts of armed robbery (Counts II and III), all Class B felonies. The trial court entered judgments of conviction on each count and then sentenced Figgs to an aggregate term of thirty-five years in prison. The convictions were affirmed on direct appeal. *Figgs v. State*, Cause No. 02A03-1010-CR-597 (Ind. Ct. App. July 19, 2011), *trans. denied*.

[4] The facts relevant to Figgs's convictions were set out in detail in our memorandum opinion on direct appeal. For our purposes, we observe that on the evening of September 1, 2009, Jessica Simon and her sister, Genell Soulier, were sitting in Simon's parked car visiting and smoking a cigarette.

Figgs approached the passenger side of the car and asked for a cigarette. Soulier told him that they were smoking the last one, so Figgs walked away. About one minute later, Figgs and a second man entered the back seat of Simon's car. Hearing a police siren, Figgs ordered Simon to drive away because "he had a warrant out for his arrest." Simon obeyed Figgs's command and drove away….

Figgs ordered Simon to turn left and stop the car. Showing the sisters that he had a semi-automatic handgun, Figgs said, "you know what the f*ck this is," and demanded that Simon and Soulier give him their purses. When Simon opened her wallet to show Figgs that she had no money, Figgs hit her on the side of the face with the butt of his gun; this caused Simon's glasses to fall off her face and into her purse. Figgs then grabbed Simon's purse, exited the vehicle, and opened the front-passenger door where Soulier was seated. Figgs pulled on Soulier's purse, and as he pulled on her purse, he pulled Soulier out of the car. Figgs then pointed his gun in Soulier's face and told her that he would shoot her if she did not sit down. Although Soulier sat down, Simon walked to the back of the car and begged Figgs to return her glasses. Figgs pointed his gun at Simon and asked her, "what makes you think I won't f*cking shoot you?" Figgs then shot Simon in the stomach. As Figgs fled on foot, Simon drove herself and Soulier to a nearby fire station where they sought assistance.

*Slip op*. at 3-4 (citations omitted).

[5]   On February 21, 2017, Figgs, by counsel, filed the instant petition for post-conviction relief. He alleged that both trial and appellate counsel were ineffective for failing to argue that his convictions on Counts I and II violated the Indiana Constitution's prohibition against double jeopardy. On June 23,

2017, the parties appeared for a hearing and entered into a stipulation of evidence in lieu of an evidentiary hearing. The parties agreed that the issues raised in the petition could be resolved on the basis of the record of proceedings from the trial and appeal. The court then set a briefing schedule.

[6] On July 26, 2017, Figgs's post-conviction counsel filed an eleven-page brief in support of the petition. Counsel then followed the State's brief with a reply brief in support of the petition on August 18, 2017. Counsel also tendered detailed proposed findings of fact and conclusions with the post-conviction court on October 10, 2017. The trial court denied the petition on October 24, 2017. Figgs now appeals from the denial and represents himself on appeal. Additional information will be provided below as needed.

## Discussion & Decision

### 1. Post-Conviction Counsel

[7] Figgs initially challenges the performance of his post-conviction counsel. According to Figgs, he was "denied a procedurally-fair post-conviction setting when post-conviction counsel failed to adequately investigate and argue [the petition] or to submit a complete trial record, preventing a full and meaningful review of the record for the 'same evidence' double jeopardy issue." *Appellant's Brief* at 8-9. Figgs asserts that there were "other issues with potential merit" and complains that counsel did not include the jury instructions in the evidence before the post-conviction court. *Id.* at 9.

As recognized by Figgs, there is no federal or state constitutional right to counsel in post-conviction proceedings. *See Hill v. State*, 960 N.E.2d 141, 145 (Ind. 2012). "It thus is not required that the constitutional standards be employed when judging the performance of counsel when prosecuting a post-conviction petition at the trial level or at the appellate level." *Baum v. State*, 533 N.E.2d 1200, 1201 (Ind. 1989). In other words, the rigorous *Strickland* standard does not apply. *Id.* Rather, "a 'lesser standard' based on due-course-of-law principles" applies. *Hill*, 960 N.E.2d at 145 (quoting *Baum*, 533 N.E.2d at 1201). "When evaluating post-conviction counsel, courts inquire whether 'counsel in fact appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of the court.'" *Id.* (quoting *Baum*, 533 N.E.2d at 1201).

Here, post-conviction counsel appeared, entered into a stipulation of evidence, filed a thorough brief in support of the petition and a reply brief, and tendered proposed findings and conclusions. Based on the stipulated evidence and arguments submitted by the parties, the post-conviction court entered judgment in favor of the State. At no point in the proceedings did counsel "abandon" Figgs. *Graves v. State*, 823 N.E.2d 1193, 1197 (Ind. 2005) (no abandonment where counsel appeared, examined petitioner, and submitted two affidavits to establish that reconstruction of record of guilty plea hearing was impossible); *cf. Waters v. State*, 574 N.E.2d 911, 912 (Ind. 1991) ("Counsel, in essence, abandoned his client and did not present any evidence in support of his client's claim."); *Taylor v. State*, 882 N.E.2d 777, 784 (Ind. Ct. App. 2008) (counsel

"effectively abandoned" petitioner where counsel "called no witnesses, presented no affidavits, and did not submit the trial record"). Post-conviction counsel's failure to include the jury instructions in the record and pursuit of only a double-jeopardy argument in addressing the effectiveness of trial and appellate counsel do not amount to abandonment. On the contrary, the record establishes that Figgs received a procedurally fair post-conviction proceeding.

## 2. Double Jeopardy

[10] Figgs next argues that his convictions related to the aggravated battery and robbery of Simon amounted to double jeopardy in violation of Article 1, Section 14 of the Indiana Constitution. Specifically, he asserts:

> [T]he convictions are predicated on the same act of force required to overcome victim resistance and get away from the premises with the property. There is also a reasonable possibility that the jury relied upon the same evidentiary facts to establish the essential elements of both the robbery and the aggravated battery of Simon, violating Indiana's *Richardson* test and the protections afforded by Indiana's rules of statutory construction and common law.

*Appellant's Brief* at 12. Accordingly, Figgs contends that the post-conviction court erred when it determined that trial and appellate counsel were not ineffective for failing to raise a double jeopardy challenge.

[11] Under Indiana's Double Jeopardy Clause, a defendant may not be convicted of two offenses if "with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one

challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999) (emphases in original). Our focus here is on the actual evidence used to convict Figgs of the offenses. This analysis requires a consideration of whether a reasonable possibility exists that the evidentiary facts used to establish the essential elements of one offense may also have been used to establish all of the essential elements of the other challenged offense. *See Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013). The reasonable possibility standard requires more than a logical possibility and turns on a practical assessment of whether the jury may have latched on to the same facts for both convictions. *Id.* at 719-20 ("We evaluate the evidence from the jury's perspective and may consider the charging information, jury instructions, and arguments of counsel."). Thus, convictions for multiple offenses committed during a protracted criminal episode are permitted when the case is prosecuted in a manner that insures that the guilty verdicts are not based on the same evidentiary facts. *Id.* at 720.

[12]    To establish robbery as charged, the State was required to prove that Figgs, while armed with a deadly weapon,[1] knowingly or intentionally took property from Simon (or Simon's presence) by using or threatening the use of force or by putting Simon in fear. *See* Ind. Code § 35-42-5-1(a); *Direct Appeal Appendix* at 12. To establish aggravated battery as charged, the State needed to prove that

---

[1] The offense was elevated to a Class B felony based on Figgs's use of a deadly weapon. Bodily injury and/or serious bodily injury were not alleged by the State with respect to the robbery offense.

Figgs knowingly or intentionally injured Simon, creating a substantial risk of death or causing serious permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ. *See* I.C. § 35-42-2-1.5; *Direct Appeal Appendix* at 11.

[13] The facts, as presented to the jury, clearly establish two separate offenses committed against Simon. Figgs robbed Simon at gunpoint when he took her purse from her inside the car. After next robbing Soulier at gunpoint, Figgs then shot Simon after she got out of the car with her hands up and pleaded with him for the glasses out of her purse. The prosecutor distinguished between the two separate crimes during opening statements:

> Defendant decides to pull out a gun, pistol whips them, …
> threatens them, robs them both, terrorizes them and then at the
> very end, after doing all of that, as [Simon] pleads for her life,
> and says please, just take what you want, let me have my glasses
> back, he shoots her, for sport.

*Transcript* at 112.

[14] At sentencing, the trial court emphasized the separate nature of the crimes. The court found that the shooting was "truly offensive" and "totally unnecessary." *Sentencing Transcript* at 12. The court noted that after stripping Soulier of her purse, Figgs then shot Simon "for absolutely no reason at all". *Id.* The court continued: "There was no reason, no meaning, no purpose. It's totally separate and distinct from the other offenses." *Id.* We agree with the trial court's assessment in this regard, and we conclude that the post-conviction court

properly determined there was no reasonable probability that the jury used the same evidence to convict Figgs of the robbery and aggravated battery of Simon.

[15] Finally, relying on the common law, Figgs argues that the shooting occurred only because Simon resisted during the robbery and that the added force he used against her was necessary to complete the robbery.[2] We agree with the post-conviction court's response to this argument. The evidence establishes that at the time of the shooting, Simon had her hands up and offered no resistance to Figgs. She simply pleaded for her glasses. The shooting was not necessary to enable Figgs – the only one armed with a gun – to make off with the purses. In other words, the shooting was in addition to and "extended well beyond what was necessary to rob" the women. *Hopkins v. State*, 759 N.E.2d 633, 639-40 (Ind. 2001) ("where the confinement of a victim is greater than that which is inherently necessary to rob them, the confinement, while part of the robbery, is also a separate criminal transgression").

[16] Because Figgs did not have a viable double jeopardy claim, his trial and appellate counsel were not ineffective for failing to raise the claim. Accordingly, the post-conviction court properly denied Figgs's petition for post-conviction relief.

---

[2] In the context of double jeopardy, Figgs attempts to relitigate whether the shooting was done knowingly or intentionally. But that issue is not properly before us. The jury found that Figgs acted knowingly or intentionally when he injured Simon by shooting her in the stomach.

Najam, J. and Robb, J., concur.